Frank WETHERILL, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, et al., Respondents.

No. 86–1053.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 8, 1986.

Decided Feb. 25, 1987.

As Amended on Denial of Rehearing May 1, 1987.

David O. Kelly, Boonville, Ind., for petitioner.

Mark E. Solomons, Arter & Hadden, Washington, D.C., for respondents.

Before CUMMINGS and CUDAHY, Circuit Judges, and CAMPBELL, Senior District Judge.*

CUMMINGS, Circuit Judge.

Petitioner Frank Wetherill filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.*, on July 6, 1978. Approximately 10 months thereafter

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

the Department of Labor notified respondent Green Construction Company ("Green") of its potential liability for payment of black lung benefits to Wetherill. Green denied liability on the ground that Wetherill was not totally disabled due to occupational pneumoconiosis (black lung disease).

In July 1980 a hearing was held before Administrative Law Judge Maxson ("ALJ") in Evansville, Indiana, pursuant to the guidelines of the Administrative Procedure Act, 5 U.S.C. §§ 554 et seq. The following February the ALJ issued a decision and order awarding benefits to petitioner. Wetherill's claim was filed before April 1, 1980, and therefore the ALJ applied the criteria for benefits eligibility contained in subpart C of part 727. See 20 C.F.R. § 725.4(a) and (d). Because of Wetherill's coal-mine employment history exceeding 10 years' duration and x-ray evidence of black lung disease, the ALJ invoked the black lung interim presumption contained in 20 C.F.R. § 727.203(a)(1).[1] Wetherill had been employed more than 30 years in surface coal mines, first as a dragline operator and then for 23 years for respondent Green as a power-shovel operator. After a bout of pneumonia in 1975 he retired on Social Security benefits. He did not seek black lung benefits until 1978 and died of a heart attack in 1982.

Green attempted to rebut the black lung interim presumption pursuant to 20 C.F.R. § 727.203(b)(2) and (3).[2] However, the ALJ found the expert opinions submitted by Green failed to establish to a "reasonable degree of medical certainty" that petitioner's disability was caused by a disease other than pneumoconiosis.[3] He found Green's medical testimony unpersuasive in light of petitioner's testimony of progressively worsening breathing problems. The ALJ refused to accept the testimony of pulmonary disease specialist Dr. William Anderson on the ground that he was hostile to the Black Lung Benefits Act[4] and because he did not establish the basis for the predicted values he had used to interpret the pulmonary function study of Wetherill.[5] Pursuant to 33 U.S.C. § 921(b) Green appealed from the ALJ's adverse decision to the Benefits Review Board (the

---

1. The interim presumption in 20 C.F.R. § 727.-203(a)(1) provides as follows:

    (a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

    (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428 of this title)....

2. 20 C.F.R. § 727.203(b) provides as follows:

    (b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:

    \*  \*  \*  \*  \*

    (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

    (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment....

    The phrase "in whole or in part" in (b)(3) was invalidated by the Benefits Review Board in *Jones v. The New River Co.,* 3 BLR 1–199 (1981), which interpreted the phrase as allowing recovery for a partial disability. The Sixth Circuit rejected *Jones* and interpreted the phrase as only referring to causation and not allowing recovery to a person only suffering from a partial disability, which would be contrary to Congress's intent. *Gibas v. Saginaw Mining Co.,* 748 F.2d 1112, 1120 (6th Cir.1984), certiorari denied, 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258.

3. The "reasonable medical certainty" standard was adopted by the Benefits Review Board in *Blevins v. Peabody Coal Co.,* 9 BRBS 510, BRB No. 78–406 BLA (1978), but that *Blevins* rule was rejected by this Court in *Underhill v. Peabody Coal Co.,* 687 F.2d 217, 223 (7th Cir.1982); *Peabody Coal Co. v. Lowis,* 708 F.2d 266, 273–274 (7th Cir.1983), and *Amax Coal Co. v. Director, OWCP,* 801 F.2d 958, 963 (7th Cir.1986).

4. As we discuss *infra,* the first ALJ improperly applied the hostility-to-the-Act rule to Dr. Anderson's testimony in this case.

5. In its first decision, the Benefits Review Board rejected this ground because Dr. Anderson's deposition testimony contained the facts he used as a basis for his predicted values, and in addition there was no evidence that the predicted values were erroneous.

"Board"). By a 2 to 1 vote, it vacated the award and remanded the case to the ALJ to consider under § 727.203(b)(2) all relevant evidence offered to rebut the interim presumption contained in 20 C.F.R. § 727.-203(a), one member dissenting on the ground that Dr. Anderson's testimony should not be considered because he was hostile to the Act. The Board did not remand to the ALJ the question of applicability of paragraph (b)(3), which he had decided adversely to Green. Because of the unavailability of Administrative Law Judge Maxson, the case was reassigned to Administrative Law Judge Giesey. Without discussing the relevant evidence in any detail, Judge Giesey found that Green had failed to rebut the interim presumption under 20 C.F.R. § 727.203(b)(2) and therefore sustained Wetherill's claim. This resulted in a second appeal to the Board which this time unanimously rejected Wetherill's claim on the ground that Dr. Anderson's medical opinions should have been accepted and showed an absence of a disabling respiratory impairment so that the interim presumption was properly rebutted under 20 C.F.R. § 727.203(b)(2). Thereafter petitioner appealed to this Court under 33 U.S.C. § 921(c). See 30 U.S.C. § 932(a) (incorporating *inter alia* 33 U.S.C. § 921, the procedures for administrative and judicial review in the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*).[6]

### Rebuttal of Total Disability under Regulation 20 C.F.R. § 727.203(b)

Petitioner claims that he was totally disabled by pneumoconiosis under the interim presumption of the Secretary of Labor's regulation contained in 20 C.F.R. § 727.-203(a) (note 1 *supra*) while respondent Green contends that the interim presumption was rebutted under paragraph (b)(2), or in the alternative paragraph (b)(3), of the regulation (note 2 *supra*). (Respondent's Br. 23.) Petitioner does not challenge the applicability of paragraph (b)(2) but claims it was not satisfied by Green. We hold that the presumption was rebutted under paragraph (b)(3) and therefore affirm the Board's second decision denying benefits to Wetherill.

■ The interim presumption of § 727.-203(a) can be rebutted by resort to the rebuttal provisions of § 727.203(b). The initial question in this case is which of the rebuttal provisions in paragraph (b) apply. The Board relied on paragraph (b)(2) as the basis for finding that Green rebutted the interim presumption. However, the evidence showed that Wetherill was *not* "able to do his usual coal mine work," 20 C.F.R. § 727.203(b)(2), because of his nonpneumoconiosis disability, so that the literal wording of paragraph (b)(2) was not satisfied. The Board apparently interpreted paragraph (b)(2) to allow rebuttal if the admitted inability to work is caused by a disease other than pneumoconiosis. (Petitioner's App. 38, 39a). This interpretation of paragraph (b)(2) seems contrary to its plain language and therefore erroneous. *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 162 n. 5 (3d Cir.1986); *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 486 n. 3 (6th Cir.1985). We have previously noted that this interpretation of paragraph (b)(2) was problematic but did not need to resolve the

---

**6.** Green equivocatingly argued in its brief that this Court's jurisdiction is "ambiguous," alleging that the record did not clearly establish that the petitioner was exposed to coal dust during his earlier Indiana employment, as opposed to his mining work for Green in Kentucky. (Respondent's Br. 1.) Green admits, as it must, that jurisdiction for a claim based on pneumoconiosis, which is a " 'cumulative' injury," is determined by "the place of injury" and thus " 'appeal lies in any circuit in which the claimant worked and was exposed to the danger, prior to manifestation of the injury.' " *Consolidation Coal Co. v. Chubb*, 741 F.2d 968, 970–971 (7th Cir. 1984) (quoting *Hon. v. Director, OWCP*, 699 F.2d 441, 444 (8th Cir.1983)). In the present case, petitioner worked at a strip mine in Indiana for at least 7 years operating a tractor and then a dragline on top of the pit stripping, and presumably hauling out, over-burden and coal. (Hearing Tr. 18–20.) Clearly, when he worked in Indiana, petitioner was a "miner engaged in coal mine employment," 20 C.F.R. § 727.203(a), as those terms are defined in 20 C.F.R. §§ 727.3, 727.201, 725.101(23) and (26), because he "worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal." 20 C.F.R. § 725.101(26). Such activities would necessarily result in some exposure to coal dust and Green provides no reason for us to conclude otherwise. At oral argument Green conceded the propriety of our jurisdiction.

issue because the Board also correctly relied on paragraph (b)(4) in that case. *Knudtson v. Benefits Review Board,* 782 F.2d 97, 100 (7th Cir.1986). We reiterate that paragraph (b)(2) is probably an improper provision with which to rebut the presumption in a case such as this. Once again, however, there is no need to resolve that question because rebuttal has been accomplished here under paragraph (b)(3).

Paragraph (b)(3), which states in part that "the total disability ... did not arise in whole or in part out of coal mine employment," enables an employer to rebut the interim presumption by proving that the miner's pneumoconiosis was not a contributing cause of his total disability. *Kertesz,* 788 F.2d at 162 n. 5, 163; *Ramey,* 755 F.2d at 486 n. 3, 491–492; *Gibas v. Saginaw Mining Co.,* 748 F.2d 1112, 1120 (6th Cir. 1984), certiorari denied, 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258; *American Coal Co. v. Benefits Review Board,* 738 F.2d 387, 391 (10th Cir.1984); *Bethlehem Mines Corp. v. Massey,* 736 F.2d 120, 123–124 (4th Cir.1984). Thus in *Ramey* the Sixth Circuit held that the employer successfully rebutted the interim presumption because "the ALJ found that [the claimant's] cardiac condition was the sole cause of his total disability" and his pneumoconiosis was not a "contributing cause." 755 F.2d at 491–492. This interpretation of the (b)(3) rebuttal provision is consistent with the statutory definition of the term "total disability" wherein it is stated that the "regulations shall provide that a miner shall be considered *totally disabled when pneumoconiosis prevents* him or her from engaging in gainful employment requiring the skills and abilities comparable to those" of his former mining employment. 30 U.S.C. § 902(f)(1)(A) (emphasis added). Similarly, the regulations define "total disability" in a manner that requires pneumoconiosis to be a contributing cause of the disability: "a miner shall be considered totally disabled if pneumoconiosis ... prevents or prevented the miner" from engaging in coal mining work or comparable and gainful work. 20 C.F.R. § 718.204(b). This definition is made applicable to paragraph (b)(3) by 20 C.F.R. §§ 727.3, 725.101(21). In the present case, Green argued that the rele-

vant medical evidence proved that Wetherill's pneumoconiosis was not a contributing cause of his total disability, which instead was caused by his arteriosclerotic heart disease. Therefore, rebuttal paragraph (b)(3) is the correct provision for evaluating the ALJ's ruling that Green failed to rebut the interim presumption.

The Board's reliance on rebuttal provision (b)(2) and rejection of (b)(3) does not prevent us from affirming its decision on the basis of paragraph (b)(3). *Kertesz,* 788 F.2d at 162 n. 5. Because the Board applied the correct standard for rebuttal under 20 C.F.R. § 727.203(b)(3), albeit seemingly using the wrong label, neither party was prejudiced by the Board's error. All agree that Wetherill was not able to do his usual coal mine work; the central issue in this case has always been (and still is) whether pneumoconiosis was a contributing cause of Wetherill's disability.

In a recent consideration of the standard of review in black lung cases, the majority of the panel held in *Old Ben Coal Co. v. Prewitt,* 755 F.2d 588 (7th Cir.1985), that if the decision of an ALJ was supported by substantial evidence, a decision of the Benefits Review Board reversing the ALJ must be reversed. Therefore, we will start our consideration with the opinion of the second ALJ dated April 14, 1983. (Petitioner's App. 44–45.) There ALJ Giesey summarized Dr. William H. Anderson's deposition testimony as follows:

> [C]laimant is physically incapable of performing his usual coal mine employment or manual labor on a regular and sustained basis. When asked a hypothetical question *in which the presence of [Wetherill's mild] pneumoconiosis alone was posited,* this physician responded that, "under the circumstances as given in the question he would be as able as any other man his age."

(Petitioner's App. 45 (emphasis supplied).) The second ALJ decided that Dr. Anderson's opinion was not sufficient to rebut the interim presumption of total disability due to pneumoconiosis disclosed by the x-ray because the record contained "no rationale for this opinion that claimant is not suffering from a totally disabling respiratory impairment" (Petitioner's App. 45).

This finding of the ALJ is completely without support in the record; therefore, the Benefits Review Board properly set it aside in its second opinion. (Petitioner's App. 48–49.) As the Board recognized in its second decision, its scope of review, like ours, is limited, so that if the ALJ's findings of fact are supported by substantial evidence, are rational and are consistent with applicable law, they are binding upon the Board. (*Id.* at 48.)

However, the Board held that "it was irrational to reject Dr. Anderson's assessment of the existence and extent of any pulmonary or respiratory impairment" because it was "supported by the complete physical examination and testing and based on the results of the pulmonary function studies" (*Id.* at 49).

■ Based on our own review of the record, we agree with the Board's conclusion that the second ALJ's decision disregarding Dr. Anderson's conclusion against claimant is not supported by substantial evidence. Dr. Anderson stated that the results of his pulmonary function studies of claimant did not "constitute any respiratory impairment since they're all within the normal range for a man his age and size" (Anderson Deposition 20). He added that Wetherill's symptoms were "due to his arteriosclerotic heart disease" and were not caused by coal dust exposure. (*Id.* at 21.) Dr. Anderson also testified that it was Wetherill's severe arteriosclerotic heart disease that would prevent him from performing his former surface coal mine employment, lifting weights or actively bending, stooping and doing other such types of manual work or labor. (*Id.* at 22.) When asked to exclude any consideration of Wetherill's arteriosclerotic heart disease, Dr. Anderson stated that Wetherill, in view of his slight pneumoconiosis, "would be as able as any other man his age" to perform usual coal mine employment or manual labor on a regular and sustained basis. (*Id.* at 23.) The witness also said that Wetherill's symptom of shortness of breath was not caused by Cateogry II simple pneumoconiosis. (*Id.* at 28.) Dr. Anderson's 1979 report of his physical examination of Wetherill was also before the ALJ and

concluded that the claimant's "ventilatory studies are all within the limits of normal" and that his heart disease was "of such severity that he has to be on anticoagulants" (Director's Exh. 21 at 2–3). His diagnosis was that Wetherill was suffering from "[a]rteriosclerotic heart disease with previous inferior wall myocardial infarction" (*Id.* at 3).

Dr. William H. Getty's 1979 report was also put in evidence and revealed that claimant had heart disease and only "minimal obstructive pulmonary disease." Dr. Getty concluded that Wetherill has "most minimal respiratory disease and * * * his dypsnea is undoubtedly more related to cardiac disease than the pulmonary abnormality" (Director's Exh. 11).

Dr. William S. Mullican concluded from Wetherill's hospital stay in 1975 that he had:

1. Bilateral pneumonitis
2. Arteriosclerotic heart disease with congestive heart failure
3. Chronic obstructive pulmonary disease.

(Director's Exh. 9.) The Board concluded that Dr. Mullican's report had no bearing on whether the interim presumption had been rebutted since he expressed no opinion "concerning the extent or existence of any functional impairment caused by claimant's pulmonary condition" (Petitioner's App. 49).

Finally, the x-ray readings relied on by the petitioner do not overcome the employer's rebuttal evidence that petitioner's disability was caused by his heart condition and not pneumoconiosis. All apparently agree with the first ALJ's conclusion that the January 30, 1979 x-ray reading showed some evidence of pneumoconiosis and triggered the interim presumption. (Petitioner's App. 28.) The other two x-rays have no bearing on the outcome of this dispute because one was unreadable and the other was overexposed and thus considered to be unreliable evidence by the first ALJ. (*Id.*) This x-ray evidence, however, does not overcome the employer's rebuttal evidence because it is silent on the extent of petitioner's respiratory or pulmonary impairment, if any, caused by the pneumoconiosis. Fur-

thermore, petitioner's testimony of his shortness of breath is evidence of the existenced of this symptom but not of its causation by pneumoconiosis, a fact that is crucial when the rebuttal evidence shows that the symptom is due solely to a noncompensable medical condition. The only medical evidence concerning causation was that of Dr. Anderson who when asked "on the basis of reasonable medical certainty in the context of your clinical examination of [Wetherill] including the studies and tests performed" to give his diagnosis of causation, responded that the symptoms were "due to [Wetherill's] arteriosclerotic heart disease" (Anderson Deposition 20–21). We have reached the same conclusion as the Board did when reviewing the second ALJ's decision: the uncontroverted medical evidence establishes that the petitioner's symptoms and his disability were caused by his heart disease and not pneumoconiosis.

In view of the above and the lack of contrary medical evidence, we agree with the Board that the second ALJ's finding of no rebuttal of the interim presumption is not supported by substantial evidence. As in *Underhill v. Peabody Coal Co.*, 687 F.2d 217, 222 (7th Cir.1982), the ALJ was not free to substitute his own expertise for that of qualified physicians. Under the authority of that case, the Board correctly held that Green had met its burden of rebutting the interim presumption by offering uncontroverted medical evidence. *Id.*

As in *Knudtson v. Benefits Review Board*, 782 F.2d 97 (7th Cir.1986), there was "literally no medical evidence submitted to the contrary" of Dr. Anderson's testimony, so that it was impermissible for the ALJ to rule that the interim presumption had not been rebutted. In *Knudtson* the court stated, "Claimant may have some form of lung disease but this does not necessarily mean it is pneumoconiosis, especially in light of his long smoking history." *Id.* at 101. *Knudtson* supports our conclusion that even if Wetherill were not able to do his usual surface mine duties or comparable work, that was not due to disabling pneumoconiosis, especially in light

of his severe heart disease and his smoking three packs of cigarettes a week for more than 30 years. (Hearing Tr. 49.)

■ We reject the petitioner's contention that Dr. Anderson's testimony should be given little if any weight because of his alleged hostility to the premises of the Black Lung Benefits Act. See *Blevins v. Peabody Coal Co.*, 9 BRBS 510, BRB No. 78–406 BLA (1978). Our cases establish that as a general rule the ALJ must consider all relevant medical evidence, cannot substitute his expertise for that of a qualified physician, and, absent countervailing clinical evidence or a valid legal basis for doing so, cannot simply disregard the medical conclusions of a qualified physician. See *Peabody Coal Co. v. Director, OWCP*, 778 F.2d 358, 362–363 (7th Cir.1985); *Peabody Coal Co. v. Lowis*, 708 F.2d 266, 275–276 (7th Cir.1983); *Underhill v. Peabody Coal Co.*, 687 F.2d 217, 222–223 (7th Cir.1982); *Peabody Coal Co. v. Director, OWCP*, 581 F.2d 121, 124 (7th Cir.1978) (*per curiam*). The hostility-to-the-Act rule only comes into play when a physician's diagnosis is affected by his subjective opinions about pneumoconiosis that are contrary to the congressional determinations implicit in the provisions of the Act. We hold that the proper test for determining if the rule is applicable is whether and to what extent those hostile opinions affected the medical diagnosis. Thus use of the hostility-to-the-Act rule has been approved to reject a physician's testimony that pneumoconiosis was not present where "he stated he would not diagnose pneumoconiosis absent positive x-ray evidence that the disease existed" despite the Act's provision for finding pneumoconiosis even where there is negative x-ray evidence. *Black Diamond Coal Mining Co. v. Benefits Review Board*, 758 F.2d 1532, 1534 (11th Cir. 1985). In another recent case, the rule was used to "reject[] that part of the doctors' testimony that was based on the offending opinion" because the two doctors' attribution of the claimant's disability to his smoking and not his pneumoconiosis "was based on their shared opinion that simple pneumoconiosis is never disabling," despite the Act's contrary premise. *Kaiser Steel*

*Corp. v. Director, OWCP,* 748 F.2d 1426, 1430 (10th Cir.1984).

 In the present case Dr. Anderson testified at his deposition that he had never come across a miner with Category I or Category II pneumoconiosis that prevented him from working and, on that basis, he was of the opinion that those types of pneumoconiosis are not severe enough to cause total disability. (Anderson Deposition 29–30.) However, Dr. Anderson relied on the results of his clinical examination and pulmonary function studies of Wetherill, rather than any "hostile" opinion, to conclude that Wetherill's arteriosclerotic heart disease caused his total disability. (*Id.* at 19–21.) Unlike *Black Diamond* and *Kaiser,* here no finding was made nor does anything in the record suggest that Dr. Anderson's criticized opinion biased his interpretation of the test results. Thus no basis existed to invoke the hostility-to-the-Act rule.

The undisputed evidence showed that Wetherill's crippling disability was due to his heart disease and not pneumoconiosis, thus the interim presumption was rebutted under 20 C.F.R. § 727.203(b)(3). Congress enacted the Black Lung Benefits Act "to provide benefits … to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease." 30 U.S.C. § 901(a). Because the employer successfully rebutted the interim presumption, there was no substantial evidence before the second ALJ that would put Wetherill within this group of intended beneficiaries and support the award of benefits. Therefore, the Board properly overturned the ALJ's award of benefits to Wetherill and we affirm.