**Henry WRIGHT, Petitioner,**

v.

**ISLAND CREEK COAL COMPANY, Director, Office of Workers' Compensation Programs; and United States Department of Labor, Respondents.**

**No. 86–3639.**

United States Court of Appeals, Sixth Circuit.

Argued June 11, 1987.

Decided July 29, 1987.

---

**506**

Albert A. Burchett, argued, Prestonsburg, Ky., for petitioner.

Martin E. Hall, argued, Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., for Island Creek.

Benefits Review Bd., U.S. Dept. of Labor, Washington, D.C., for U.S. Dept. of Labor.

Office of Sol., U.S. Dept. of Labor, Washington, D.C., J. Michael O'Neill and Ronald G. Ray, for Director, Office of Workers' Compensation Programs.

Before WELLFORD, MILBURN and NELSON, Circuit Judges.

MILBURN, Circuit Judge.

Petitioner-appellant Henry Wright appeals from a decision of the Benefits Review Board affirming the decision of an Administrative Law Judge ("ALJ") denying benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* For the reasons that follow, we affirm.

I.

Petitioner was born on August 14, 1932, and has a ninth-grade education. Prior to his retirement on June 7, 1974, petitioner had worked as a coal miner for sixteen years. Petitioner retired from coal mining because his doctor "advised it because of silicosis." Petitioner applied for benefits on June 24, 1974, but was determined to be ineligible. Respondent was designated the responsible operator, and the case was referred to the ALJ.

The medical evidence includes, in addition to X-ray evidence which established the existence of pneumoconiosis, the reports and opinions of several examining physicians. Dr. William Anderson examined petitioner on February 18, 1974, and diagnosed "(1) Arteriosclerotic heart disease with paroxysmal nocturnal dyspnea, and electrocardiographic changes, (2) Category 2 occupational pneumoconiosis, (3) Elevation of blood pressure." Dr. Anderson opined that petitioner "should not have further exposure to the conditions which produced the pneumoconiosis," and that "under these circumstances, [petitioner] would be 100% vocationally disabled for coal mining." Joint Appendix at 6. Further, Dr. Anderson deposed that petitioner's shortness of breath was due to heart disease which prevented him from doing arduous work, and that if it were not for the heart disease, petitioner would have the physical capacity for "arduous employment." Joint Appendix at 9.

Dr. Richard O'Neill examined petitioner on March 13, 1974, and on March 23, 1979, diagnosing "1. Chronic bronchitis. 2. Coal worker's pneumoconiosis, simple, stage 2/2 (p and q). 3. Hypertension. 4. History of congenital absence of the right kidney. 5. History of renal calculus. 6. History of gastric ulcer." Joint Appendix at 13. Further, Dr. O'Neill deposed that petitioner "can do most forms of manual labor" but that petitioner should "remain out of the dusty environment of the mines." Dr. O'Neill also deposed that petitioner is not totally disabled by any chronic dust disease of the lungs and that, "from a pulmonary standpoint," petitioner has the "pulmonary physiological capacity to return to his usual job in the coal mines." Joint Appendix at 16–17.

Dr. Lowell Martin examined petitioner on February 26, 1974, and diagnosed "silicosis." Dr. Martin opined that petitioner "should not return to underground coal mining because of his silicosis." Joint Appendix at 10. Further, Dr. Ballard Wright examined petitioner on March 25, 1974, and diagnosed "coal worker's pneumoconiosis, Category 1, with functional ventilatory impairment," "hypertensive cardiovascular disease with left ventricular strain and hypertrophy," and "a history of arteriosclerotic heart disease with paroxysmal atrial tachycardia and exertional angina." Dr. Wright opined that "further exposure to coal dust or other environmental pollutants is hazardous" for petitioner. Joint Appendix at 19.

Dr. Mary Hall examined petitioner on August 2, 1976, and diagnosed "respiratory disease." Dr. Hall opined that petitioner "is without a doubt totally and permanently disabled from any type of gainful employment." Joint Appendix at 23. Further, Dr. Grady Stumbo examined petitioner on October 7, 1975, and diagnosed "coal worker's pneumoconiosis." Dr. Stumbo opined that petitioner's condition "would disable him for the mining industry and dusty environments." Joint Appendix at 24.

The ALJ found that petitioner was entitled to invocation of the interim presumption of disability under 20 C.F.R. § 727.-203(a)(1) because petitioner had produced X-ray evidence which established the existence of pneumoconiosis. The ALJ further found that respondent had rebutted the interim presumption of disability under 20 C.F.R. § 727.203(b)(2) and (b)(3) by producing evidence that petitioner has "the pulmonary physiological capacity to do coal mine labors," and that petitioner's smothering and chest pains were attributable to his heart disease. The ALJ concluded that while petitioner "has coalworker's pneumoconiosis," he is capable of performing his previous coal mine work.

## II.

Petitioner argues that the ALJ erred in finding that the interim presumption of disability had been rebutted under 20 C.F.R. § 727.203(b)(2) and (b)(3). "This court must affirm the [ALJ's decision] if it is supported by substantial evidence and [is] in accordance with the applicable law." *Kolesar v. Youghiogheny & Ohio Coal Co.,* 760 F.2d 728, 729 (6th Cir.1985) (per curiam). "Substantial evidence" is defined as "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ The ALJ applied an erroneous legal standard in reasoning that rebuttal may be accomplished under section 727.203(b)(2) by proof that the claimant does not have a totally disabling respiratory impairment. Section 727.203(b)(2) provides that the interim presumption of disability is rebutted if "[i]n light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work." "Fairly read, [section] 727.203(b)(2) establishes two methods of rebutting the presumption of total disability: (1) by showing that the individual is able to perform his usual coal mine work, *or* (2) that claimant is able to do other comparable and gainful work." *Kolesar,* 760 F.2d at 730 (emphasis in original). The interim presumption of disability may not be rebutted pursuant to section 727.203(b)(2) solely on the basis of evidence that the claimant does not have a totally disabling respiratory impairment. *York v. Director, Office of Workers' Compensation Programs,* 819 F.2d 134, 136–137 (6th Cir.1987); *Sykes v. Director, Office of Workers' Compensation Programs,* 812 F.2d 890, 893–94 (4th Cir.1987); *Wetherill v. Director, Office of Workers' Compensation Programs,* 812 F.2d 376, 379 (7th Cir.1987); *Kertesz v. Crescent Hills Coal Co.,* 788 F.2d 158, 162 n. 5 (3d Cir.1986); *Ramey v. Kentland Elkhorn Coal Corp.,* 755 F.2d 485, 486 n. 3 (6th Cir.1985). "Section 727.203(b)(2) is concerned with the question of whether miners are totally disabled *for whatever reason.* There is no inquiry into causation in a proper [section] 727.203(b)(2) rebuttal.... Causation is addressed in [section] 727.203(b)(3)." *Sykes,* 812 F.2d at 893–94 (emphasis in original).

■ Moreover, the ALJ's finding that petitioner is able to perform his previous coal mine work is not supported by substantial evidence. The ALJ relied upon the opinions of Dr. Anderson and Dr. O'Neill. Dr. Anderson opined that petitioner suffers from "category 2 pneumoconiosis" and that

petitioner should "avoid exposure to the conditions which produced the pneumoconiosis." Dr. Anderson concluded that while petitioner's pneumoconiosis would not, by itself, prevent him from performing "arduous employment," petitioner "would be 100% vocationally disabled for coal mining."

Dr. O'Neill opined that while petitioner suffers from "chronic bronchitis" and "coal worker's pneumoconiosis, simple, stage 2/2," he has the "pulmonary physiological capacity" to return to his job in the mines. Dr. O'Neill did not, however, opine that petitioner is able to perform his previous coal mine work, stating that petitioner "should remain out of the dusty environment of the mines." Where the medical evidence establishes that the claimant must avoid further exposure to coal dust in light of an already accrued case of pneumoconiosis, the claimant is no longer capable of performing his usual coal mine work.

■ The ALJ's erroneous application of section 727.203(b)(2) does not, however, prevent us from affirming the ALJ's finding that rebuttal was accomplished pursuant to section 727.203(b)(3). Section 727.203(b)(3) provides that the interim presumption of disability is rebutted if "[t]he evidence establishes that the total disability ... did not arise in whole or in part out of coal mine employment." Section 727.203(b)(3) permits an employer to rebut the interim presumption by proving that pneumoconiosis was not a contributing cause of the claimant's disability. *Gibas v. Saginaw Mining Co.,* 748 F.2d 1112, 1120 (6th Cir.1984), *cert. denied,* 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); *see also Wetherill,* 812 F.2d at 380; *Bernardo v. Director, Office of Workers' Compensation Programs,* 790 F.2d 351, 352–53 (3d Cir.1986). Rebuttal may be accomplished where the "sole" cause of the claimant's disability is something other than pneumoconiosis. *Ramey,* 755 F.2d at 492; *see also Wetherill,* 812 F.2d at 383.

■ The ALJ's finding that petitioner's disability was due to heart disease and not pneumoconiosis is supported by substantial evidence. Dr. Anderson opined that the

results of his pulmonary function studies revealed that petitioner's "vital capacity and maximum breathing capacity [were] both over 100% of predicted" and that the results "were within normal limits." Further, Dr. Anderson opined that petitioner's symptoms were due to his arteriosclerotic heart disease. Finally, Dr. Anderson opined that if petitioner had only his pneumoconiosis he would be able to perform arduous employment.

### III.

Accordingly, the decision of the ALJ denying benefits is AFFIRMED.

WELLFORD, Circuit Judge, concurring.

I concur in the decision to affirm the decision of the Board and of the Administrative Law Judge in this case. I fully agree with Judge Milburn's rationale that rebuttal by respondents was accomplished under section 727.203(b)(3) in that Wright's presumption of disability is overcome if "[t]he evidence establishes that the total disability ... did not arise in whole or in part out of coal mine employment". I conclude that substantial evidence supports the finding that pneumoconiosis is not a contributing cause of claimant's disability. *Ramey v. Kentland Elkhorn Coal Corp.,* 755 F.2d 485, 492 (6th Cir.1985); *Wetherill v. Director, Office of Workers Compensation Programs,* 812 F.2d 376, 380 (7th Cir. 1987). *Compare Roberts v. Benefits Review Board,* 822 F.2d 636 (6th Cir.1987). There is, to put it another way, substantial evidence to support a finding that inability to continue coal mine employment was due entirely to Wright's heart condition, not his pulmonary condition.

In view of this basis for affirmance, I see no reason to discuss the question of rebuttal, or failure to rebut, under section 727.-203(b)(2). I consider that discussion, under the circumstances, to be dicta. *See Ramey,* 755 F.2d at 488 n. 3. I do not find it necessary to decide whether or not there is substantial evidence to support a finding that petitioner is able to perform comparable work to his coal mine employment, or even certain types of coal mine work.

On this basis, I concur in the denial of benefits.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in the court's opinion, but write separately to address what I perceive to be a conflict between the decision in this case and that in *Roberts v. Benefits Review Board,* 822 F.2d 636 (6th Cir.1987).

In *Roberts,* as here, an administrative law judge and the Benefits Review Board denied benefits to a coal miner who suffered both from pneumoconiosis and an unrelated medical condition. (Mr. Roberts had been disabled by a stroke.) The ALJ concluded in *Roberts* that the statutory presumption of entitlement to benefits had been rebutted under 20 C.F.R. §§ 727.-203(b)(2) and (3), but he misread both sections; as far as (b)(3) was concerned, the ALJ treated the presumption as having been rebutted because the evidence established that the miner's total disability did not arise "in whole" out of coal mine employment, whereas the regulation requires a finding that the total disability did not arise "in whole or in part" out of coal mine employment. A three-judge panel of this court reversed the decision and held that Mr. Roberts was entitled to benefits.

One member of the panel (myself, as it happens) dissented. Because the evidence in *Roberts* would have supported findings that Mr. Roberts' stroke would have been totally disabling even without the pneumoconiosis and that the pneumoconiosis would not have been disabling without the stroke, and because I thought such findings would have satisfied § 727.203(b)(3), I would have remanded the case to let the ALJ determine whether, in the words of (b)(3), "[t]he evidence establishe[d] that the total disability ... did not arise in whole or in part out of coal mine employment." It seemed to me, as I said in my dissent, that "[i]f, on remand, the ALJ were to find that Mr. Roberts' total disability was solely the result of his stroke, and that (b)(3) applied because the pneumoconiosis would not have been disabling in the absence of the stroke, I do not see how we could reverse

the finding without ignoring the word "total" and repudiating our decision in *Ramey* [*v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485 (6th Cir.1985)]."

There being no indication, in the case at bar, that the ALJ was misreading (b)(3), I do not see how we could reverse the finding here without repudiating our decision in *Ramey*. Conversely, I do not see how we can affirm the finding without repudiating our decision in *Roberts*. Believing *Ramey* right and *Roberts* wrong, I have no hesitancy about joining the court's opinion in this case. I fully support the long-standing tradition of this court that one three-judge panel of the court is not to overrule a prior decision of another panel of the court, but where, as here, one is confronted with two prior decisions that appear inconsistent, I take it that he ought to resolve the dilemma by following the decision he believes to be correct.