FREEMAN UNITED COAL MINING
COMPANY, Petitioner,

v.

BENEFITS REVIEW BOARD, UNITED
STATES DEPARTMENT OF LABOR,
Director, Office of Workers' Compensation Programs, and Delores Shoemake
(Widow of Thomas Shoemake), Respondents.

No. 89–2308.

United States Court of Appeals,
Seventh Circuit.

Argued May 1, 1990.

Decided Nov. 30, 1990.

Louis R. Hegeman, Jay D. Stein, Louis
D. Bernstein, Gould & Ratner, Chicago, Ill.,
for petitioner.

Linda M. Meekins, Benefits Review Bd.,
Dept. of Labor, Washington, D.C., Harold
B. Culley, Jr., Raleigh, Ill., Donald S. Shire,
Sol. Gen., Michael J. Denney, Robert E.
Kirschman, Jr., Dept. of Labor, Office of
the Solicitor, Washington, D.C., John H.
Secaras, Sol. Gen., Dept. of Labor, Chicago,
Ill., Rae Ellen Frank James, Michael J.
Rutledge, Dept. of Labor, Black Lung Div.,
Washington, D.C., for respondents.

Before BAUER, Chief Judge,
CUDAHY, Circuit Judge, and PELL,
Senior Circuit Judge.

CUDAHY, Circuit Judge.

Freeman United Coal Mining Company
("Freeman") petitions this court for review
of an award of black lung benefits to the
surviving spouse of Thomas Shoemake.
The sole issue on appeal is whether Freeman established rebuttal of the interim presumption of total disability under 20 C.F.R.
§ 727.203(b)(3). The Administrative Law
Judge and Benefits Review Board both
agreed that the evidence did not establish
rebuttal and awarded benefits. For the
reasons set forth below we affirm.

I.

Freeman employed Thomas Shoemake as
a miner from 1948 to 1984. In 1980 Shoemake filed a claim for black lung benefits
pursuant to 30 U.S.C. § 901 *et seq.* When
he died four years later in 1984, Shoe-

make's wife filed a claim for survivor's benefits which, after being initially denied in 1986,[1] was referred to an Administrative Law Judge for a formal hearing. Because Shoemake's claim was filed before April 1, 1980, the ALJ applied the benefits criteria contained in Part 727, subpart C. *See* 20 C.F.R. § 725.4(a). The ALJ determined that Shoemake had invoked the interim presumption of total disability due to pneumoconiosis arising out of coal mining employment under § 727.203(a)(1). The ALJ found that the interim presumption applied based on Shoemake's length of employment with Freeman (stipulated by the parties to be 20 years) and based on the autopsy reports of Drs. Thompson and Eggleston, which established pneumoconiosis.

Having found the presumption invoked, the ALJ evaluated Freeman's rebuttal evidence. Under § 727.203(b) a responsible operator may introduce evidence showing (1) that the miner is still working in the mine or performing comparable work, (2) that the miner is able to perform his coal mining work or comparable work, (3) that the miner's disability was not caused by his mining employment or (4) that the miner does not have pneumoconiosis. 20 C.F.R. § 727.203(b)(1–4). After considering the medical evidence submitted by the parties (and discussed more fully below) the ALJ determined that Freeman failed to introduce evidence sufficient to rebut causation under (b)(3) and therefore granted benefits to Shoemake's widow. Freeman timely appealed to the Benefits Review Board, arguing that the ALJ should have found rebuttal under § 727.203(b)(3) based on medical evidence indicating lack of a causal link between Shoemake's disability and his coal mining employment.[2] The Board affirmed the ALJ's order and decision awarding benefits, and Freeman filed this timely petition for review pursuant to 33 U.S.C. § 921(c).

## II.

■ On review, we must determine whether the ALJ's decision is supported by substantial evidence, is in accordance with the law and is not irrational. *Zettler v. Director, O.W.C.P.*, 886 F.2d 831, 834 (7th Cir.1989); *Pancake v. AMAX Coal Co.*, 858 F.2d 1250, 1255 (7th Cir.1988); *AMAX Coal Co. v. Burns*, 855 F.2d 499, 501 (7th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). While this court must review the entire record, we may neither redetermine the facts nor substitute our own judgment for that of the ALJ. *Zettler*, 886 F.2d at 834. Because the evidence introduced by Freeman does not establish rebuttal, the ALJ's decision must be affirmed.

At the hearing before the ALJ the parties presented evidence establishing that Shoemake smoked one pack of cigarettes a day for thirty years and that he was diagnosed as having cancer in 1983. The parties also introduced into evidence medical reports from five different doctors. Two of the reports were prepared following Shoemake's death. The first autopsy report, prepared by Dr. Thompson in December 1984, diagnosed Shoemake as having, among other things, coal workers' pneumoconiosis. Freeman introduced a second autopsy report prepared by Dr. Eggleston who reviewed the original autopsy report in 1986. He reported that, "[t]here is no evidence of a pneumoconiosis of any type which would have disabled this patient during life or contributed signi[fi]cantly to his death."

Also introduced into evidence were the reports of three physicians who examined Shoemake while he was alive. Dr. William Hays examined Shoemake in 1980 and diagnosed him to have coal workers' pneumoco-

---

1. Although Shoemake died before a final ruling was entered on his claim, the ALJ correctly resolved his claim for benefits before considering his wife's claim for survivor's benefits. A claim for survivor's benefits need not be reached when the deceased miner is entitled to benefits in his own right. 20 C.F.R. § 725.212.

2. Freeman also appealed on grounds that the ALJ should have applied regulations found at 20 C.F.R. Part 718 to the claim. This argument was rejected by the Board and is not advanced on this appeal.

niosis and chronic bronchitis. Dr. Hays concluded that Shoemake's condition was related to dust exposure in the patient's coal mining employment. Dr. William Getty examined Shoemake in 1981. He reported that the miner suffered from, among other things, obstructive pulmonary disease caused by both a history of smoking and exposure to coal dust.

Other evidence submitted includes Dr. Thomas Hyde's records spanning from 1983 to the time of Shoemake's death in November 1984. Dr. Hyde treated Shoemake during a four week hospital stay in late 1983. The records submitted cover that period of hospitalization as well as treatments both preceding and following the stay. In August of 1984 Dr. Hyde stated in a letter that "Mr. Thomas Shoemake is totally disabled with ... x-ray evidence of coal miner's pneumoconiosis." Although Dr. Hyde did not elucidate the basis for his conclusion in this letter, the record indicates that Dr. Hyde had treated Shoemake on at least a dozen occasions prior to making this statement. Finally, the record contains a report of Dr. Carson who examined Shoemake in 1983. That report diagnosed Shoemake as having obstructive lung disease (black lung disease).

### III.

 Freeman argues that the ALJ erred when he failed to find that the medical testimony was sufficient under (b)(3) to rebut the interim presumption of disability.[3] As suggested previously, in order to rebut the presumption pursuant to (b)(3), the employer may establish "that the miner's pneumoconiosis was not a *contributing cause* of his total disability." *Wetherill v. Director, Office of Workers' Compensation Programs*, 812 F.2d 376, 380

(7th Cir.1987) (emphasis supplied); *Pancake*, 858 F.2d at 1257. Contrary to Freeman's suggestion, the test for rebuttal is not whether the medical evidence establishes that pneumoconiosis was not the sole cause of the disability. Rather, when all the relevant evidence is viewed, as required by § 727.203(b), rebuttal is established under subsection (b)(3) only if the employer demonstrates that pneumoconiosis was in no way a factor contributing to the coal miner's disability. *Freeman v. Benefits Review Board*, 912 F.2d 164, 172 (7th Cir. 1990). The ALJ rejected Freeman's arguments and concluded that the company had not rebutted the presumption that Shoemake's disability was related in some way to his mining employment.[4]

In support of its argument, Freeman first claims that the ALJ, in evaluation of the rebuttal evidence, failed to accord Dr. Eggleston's autopsy report significant probative value. According to the company, this report (in combination with the reports of Drs. Getty and Hays) dictates a finding that Shoemake's disability was not caused by pneumoconiosis. Dr. Eggleston stated that he did not find any evidence of pneumoconiosis that would have disabled Shoemake during his life. He did not say, however, that pneumoconiosis did not play any part in Shoemake's disability and, under *Wetherill*, Freeman has the burden of showing the absence of any such causal link. Pneumoconiosis did not have to be the only factor in Shoemake's disability, it had to be merely a contributing factor. The second part of Eggleston's statement, that there was no evidence that pneumoconiosis contributed *significantly* to Shoemake's death, further tends to support the ALJ's finding that Eggleston's report did not establish rebuttal under (b)(3). By stating that the disease did not contribute "sig-

---

**3.** This is the sole issue presented for review by Freeman since the company does not challenge invocation of the presumption under § 727.203(a) or the ALJ's finding that the presumption was not rebutted pursuant to § 727.203(b)(1), (b)(2) or (b)(4). Accordingly we accept the ALJ's determination that Shoemake had pneumoconiosis and was totally disabled.

**4.** The ALJ erroneously stated that Freeman could establish (b)(3) rebuttal by showing that the miner's disability was not *significantly* related to his coal mining employment. As indicated above, this court has adopted the view that the responsible operator must prove that the disability is not a contributing cause of his disability in order to establish rebuttal under § 727.203(b)(3). *Wetherill v. Director, O.W.C.P.*, 812 F.2d 376, 380 (7th Cir.1987).

nificantly" to his death, the doctor did not exclude the possibility that the disease contributed in some, presumably lesser, degree.[5] In sum, the statement made by Eggleston is ambiguous and, for that reason, the ALJ could have properly discounted it. Moreover, the reports submitted by Dr. Hays and Dr. Getty do not strengthen Freeman's argument. Dr. Hays concluded that Shoemake's pneumoconiosis was related to coal dust he breathed in his coal mine employment. Dr. Hays' report did not discuss the degree to which pneumoconiosis was or was not a contributing factor to Shoemake's total disability. Likewise, Dr. Getty did not discuss the relationship, or lack of relationship, between Shoemake's total disability and his chronic pulmonary disease. Although Dr. Getty found that the disease had arisen from Shoemake's employment, he did not pursue the further link to the disability. In sum, Freeman failed to introduce any evidence clearly rebutting the presumption that pneumoconiosis arising out of Shoemake's coal mining employment contributed to his total disability. The ALJ had to conclude, as he did, that Freeman did not establish (b)(3) rebuttal.

Petitioner premises its final arguments on the following incorrect proposition of law: before the ALJ may find that rebuttal has *not* been established under subsection 203(b)(3), he must first find that the *claimant* has demonstrated that the miner was totally disabled as a result of pneumoconiosis (petitioner's brief at 12–14). From this premise the petitioner argues first that Dr. Hyde's one sentence letter, concluding from x-ray evidence that Shoemake was totally disabled from coal miner's pneumoconiosis, is inadequate. The letter cannot serve as a basis for finding that the claimant's disability arose out of his coal mine employment because the letter fails to state this explicitly. Freeman then argues that Dr. Hyde's cursory letter is insufficient to contradict the autopsy evidence of Dr. Eggleston and the medical reports of Drs. Getty and Hays. Both of these latter physicians found that Shoemake's pneumoconiosis was caused by his mining employment but that the disease was not totally disabling. Freeman regards this whole line of argument as establishing rebuttal.

Freeman's contention is premised on an erroneous legal proposition. The very essence of the interim presumption is that once a claimant proves that a miner worked in the mining industry for more than 10 years and establishes one of the five medical requirements set forth in subsection 203(a)(1–5), the burden of going forward shifts to the employer. The employer must demonstrate by a preponderance of the evidence that, in light of all the relevant medical evidence, the total disability or death did not arise *in whole or in part* out of coal mine employment. To accept Freeman's line of argument would be to vitiate the presumption. Freeman's approach would require a claimant who has already invoked the presumption to adduce additional evidence of total disability. As the respondent correctly points out in response to Freeman's argument, *Wetherill* requires that the employer, in order to establish rebuttal under § 727.203(b)(3), prove that pneumoconiosis was not a contributing cause of the miner's total disability. 812 F.2d 376 (7th Cir.1987). In the present case, there was no medical evidence before the ALJ establishing that pneumoconiosis was not a cause contributing to Shoemake's total disability. In fact, the very evidence the company relies on in support of reversal demonstrates that pneumoconiosis was at least one cause of Shoemake's disability and that this pneumoconiosis was attributable to Shoemake's mine employment: Dr. Hays diagnosed pneumoconiosis and stated that it was related to Shoemake's coal mining employment; Dr. Getty determined that Shoemake's obstructive pulmonary disease was in part due to coal dust exposure. Even Dr. Eggleston's report fails to contradict the evidence that pneumoconiosis was a factor contributing

---

**5.** We recognize the slippery semantic slope that might result from distinctions between "significant" and "insignificant" causes. But in this context, "significant" is an ambiguous term and does not appear to meet the statutory standard under § 727.203(b)(3): "in whole or in part...." See *Wetherill,* 812 F.2d at 380.

to Shoemake's employment-related disability. Dr. Eggleston's report merely finds that the disease did not disable Shoemake or "significantly" contribute to his death. This finding is not dispositive under *Wetherill*.

### IV.

Petitioner's argument that the ALJ's decision is not supported by substantial evidence is without merit since the parties introduced no medical evidence on rebuttal establishing that pneumoconiosis was not a contributing cause of Shoemake's disability. The ALJ indicated that, to merit benefits, black lung disease must be a *significantly* contributing cause of disability, but this overstates the requirements. The rebuttal standard of § 727.203(b)(3) enunciated under *Wetherill* places on the employer, if anything, heavier burdens than those assigned by the ALJ. *See* note 5, *supra*. For these reasons, we find that the ALJ's order granting benefits is supported by substantial evidence and the decision of the Benefits Review Board is, therefore,

AFFIRMED.