**PEABODY COAL COMPANY and Old Republic Insurance Company, Petitioners,**

v.

**Harold GREER and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 94–3534.

United States Court of Appeals, Sixth Circuit.

Submitted May 26, 1995.

Decided Aug. 16, 1995.

Laura Metcoff Klaus, Mark E. Solomons (briefed), Arter & Hadden, Washington, DC, for Peabody Coal Co. and Old Republic Ins. Co.

Joseph H. Kelley (briefed), Monhollon & Kelley, Madisonville, KY, for Harold Greer.

Christian P. Barber, Edward Waldman (briefed), U.S. Dept. of Labor, Office of the Sol., Washington, DC, for Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor.

Before: KRUPANSKY, MILBURN, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Peabody Coal Company ("Peabody") and Old Republic Insurance Company, the petitioners, appeal the Benefit Review Board's ("Board") affirmance of an Administrative Law Judge's (ALJ) award for Harold Greer, the respondent, and the Board's subsequent denial of Peabody's motion for reconsideration. Originally, the ALJ denied benefits to Greer, but after the relevant law changed, she reconsidered and granted benefits. Peabody appealed because it never had the opportunity to present evidence and rebut claims under the new legal standard. Although the Board rejected Peabody's argument, we agree with Peabody and reverse.

## I.

On March 5, 1980, Harold Greer filed a claim under the Black Lung Benefits Act (the "Act"), 30 U.S.C. § 901–945, against Peabody and its insurance carrier, Old Republic Insurance Company.

### A. The ALJ's First Decision

According to 20 C.F.R. § 727.203(a)(1), "[a] miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis [if] ... [a] chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis." 20 C.F.R. § 727.203(a)(1) (1995). In her first decision, issued on May 20, 1985, the ALJ found that Greer was entitled to the benefit of the interim presumption of total disability under (a)(1) because Greer had over twenty-five years of coal mine employment and the x-ray evidence established that he had pneumoconiosis. The ALJ also found, however, that Greer was not entitled to the interim presumption under §§ 727.203(a)(2)–(4).

For her analysis under (a)(1), the ALJ provided an exhaustive interpretation of the eight x-rays in the record. For the ten x-ray readings performed by B-readers, the ALJ noted that five readings were positive and five were negative. The ALJ invoked the now-obsolete "true doubt rule" to resolve the conflict in favor of Greer. The ALJ also found that for the eight x-ray readings performed by Board-certified radiologists, six readings were positive and two readings were negative.

The ALJ ultimately held, however, that Peabody had successfully rebutted the interim presumption under § 727.203(b)(2), which provides for rebuttal if "[i]n light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work." 20 C.F.R. § 727.203(b)(2) (1995). The ALJ applied *Sykes v. Itmann Coal Co.*, 2 B.L.R. 1–1089 (Ben.Rev.Bd.1980), which held that a party met its burden under (b)(2) if the evidence established that the respiratory impairment was not totally disabling. The ALJ referred to the analysis of the medical opinion reports contained in her discussion of the (a)(4) interim presumption and found that Greer's respiratory impairment was *not totally disabling.*

The ALJ also reviewed the medical opinions under § 727.203(b)(3), which provides that the presumption is rebutted if "[t]he evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(3) (1995). The ALJ concluded, however, that the medical opinions failed to establish that Greer's total disability did not arise in whole or in part out of coal mine employment. The ALJ further held that Peabody did not rebut under §§ 727.203(b)(1) or (b)(4).

### B. This Court's Decision in *York*

While Greer's appeal of the ALJ's decision was pending, this Court decided *York v. Benefits Review Board,* 819 F.2d 134 (6th Cir. 1987). In *York,* we rejected the *Sykes* standard of rebuttal under (b)(2) and held that an employer cannot rely solely on evidence demonstrating the lack of a totally disabling respiratory impairment, but must prove that the claimant was capable of performing his usual coal mine employment or comparable and gainful employment. *Id.* at 138.

In the case at bar, the Board, in a January 29, 1988 decision, vacated the ALJ's (b)(2) rebuttal finding, and remanded the case with instructions for further findings under *York.* Noting that no one had challenged the ALJ's findings that rebuttal was not established under (b)(1), (b)(3), and (b)(4), the Board affirmed those findings.

Peabody filed a motion for reconsideration, arguing that the Board erred in raising (b)(2) *sua sponte* because Greer did not specifically challenge the (b)(2) rebuttal standard. Peabody also argued that, assuming *York* did apply, the ALJ must reconsider rebuttal under both (b)(2) and (b)(3) "because the change in the law is so dramatic." In a May 23, 1988 decision, the Board found that it was not precluded from raising (b)(2) *sua sponte* and that Peabody no longer had the right to challenge the ALJ's finding of no rebuttal under (b)(3) because Peabody failed to raise the issue in its response brief.

## C. The ALJ's Second Decision

In her August 6, 1990 decision, twenty-six and one-half months after the Board's last decision, the ALJ awarded benefits. The ALJ found that Peabody failed to establish under (b)(2) that Greer "could perform his last coal mining job" given his heart condition and, therefore, failed to rebut the interim presumption.

Peabody appealed and argued in part that the Board must allow it the opportunity to establish rebuttal under (b)(3) because *York* had heightened the (b)(2) standard. The Board rejected Peabody's arguments under the "law of the case" doctrine, affirmed the award, and subsequently denied Peabody's motion for reconsideration.

## II.

This Court must affirm an ALJ's decision so long as it is supported by substantial evidence and is in accordance with the applicable law. *Wright v. Island Creek Coal Co.*, 824 F.2d 505, 507 (6th Cir.1987). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). This Court has plenary authority to review the Board's legal conclusions. *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1119 (6th Cir.1984), *cert. denied*, 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985).

We find that *York's* alteration of the (b)(2) standard dramatically affects an employer's strategy for rebuttal in a case involving a claimant like Greer with a number of health problems. Before *York* was issued in 1987, an employer could establish rebuttal fairly easily under (b)(2) by showing that the claimant's respiratory problems were not severe. In contrast, rebuttal under (b)(3) was more difficult because the employer had to show that coal mine employment was not responsible "in whole or in part" for the claimant's disability. After *York*, in order to rebut the presumption under (b)(2), an employer had to address all of a claimant's health problems and demonstrate that even with all of those problems the claimant was still able to perform his coal mine work. Under (b)(3), however, an employer could still rebut by showing that the claimant's "total disability" was caused by something other than pneumoconiosis. *Wright*, 824 F.2d at 508. Thus, rebuttal under (b)(3) became easier than rebuttal under (b)(2).

*York* also had a detrimental effect on Peabody's prior decision not to appeal the ALJ's (b)(3) determination because the ALJ's finding of rebuttal under (b)(2) lulled Peabody into forgoing an appeal based on (b)(3). For example, in her discussion of the interim presumption under (a)(4), the ALJ discredited the opinions of Dr. Calhoun and Dr. Traughber, but accorded the opinions of Dr. Getty, Dr. Anderson, and Dr. Gallo "great weight." Of the latter three opinions, two out of the three supported (b)(3) rebuttal. However, in concluding that Peabody had not established rebuttal under (b)(3), the ALJ cited both the Calhoun and Traughber opinions, which did not support (b)(3) rebuttal. Therefore, Peabody might have successfully challenged the ALJ's reliance on discredited medical opinions to rule against rebuttal under (b)(2).

We hold that this Court's decision in *Harlan Bell Coal Co. v. Lemar*, 904 F.2d 1042 (6th Cir.1990), entitles Peabody to a new trial. In a factual situation similar to that in the case at bar, the ALJ in *Harlan Bell* invoked the interim presumption under (a)(1), but denied benefits under the pre-*York* (b)(2) rebuttal standard because the ALJ found that the claimant did not suffer from a totally disabling respiratory or pulmonary impairment. *Id.* at 1044. After the record in the case was closed but before the ALJ released its order, this Court issued *York. Id.* at 1044–45. In reversing the ALJ's decision, the Board improperly made findings of fact that the claimant additionally suffered from back and heart problems and held that the post-*York* (b)(2) standard precluded a rebuttal on evidence showing disabling back, heart, and respiratory or pulmonary impairments. *Id.* at 1045. We remanded the case to the ALJ, holding in part that the employer's right to a hearing, which is part of its

Fifth Amendment due process rights, "encompasses not only the right to present evidence, but also the right to rebut the claims of [the claimant] under the correct legal standards." *Id.* at 1049 (citations omitted). We also found that a "manifest injustice" would result if the employer were not allowed to present proof directed at a new interpretation of the law. *Id.* at 1047–48.[1]

We addressed the same "manifest injustice" principle in *Tackett v. Benefits Review Board,* 806 F.2d 640 (6th Cir.1986), in which the ALJ awarded benefits by relying on a Board decision holding that lung cancer was a chronic lung disease as a matter of law and was sufficient to invoke the interim presumption under 30 U.S.C. § 921(c)(2). *Id.* at 641. The Board subsequently overruled its decision and held that the claimant first must establish that the claimant's lung cancer was a chronic disease of the lung. *Id.* This Court, noting that a court must apply the law in effect at the time of decision unless a "manifest injustice" would result, held that applying the new rule would not result in a manifest injustice only if the claimant was given the opportunity to present proof under the new rule. *Id.* at 642. Before the new rule, "there was no reason" for the claimant to provide evidence that the claimant's lung cancer was a chronic disease. *Id.*

We recognize that in *Wright v. Island Creek Coal Co.,* 824 F.2d 505 (6th Cir.1987), this Court refused to find an erroneous application of (b)(3) simply because the ALJ applied the pre-*York* (b)(2) standard. *Id.* at 508. This Court, deciding the case after *York,* held that the ALJ's application of the pre-*York* (b)(2) to find rebuttal did not prevent affirmation of the ALJ's finding of rebuttal under (b)(3). *Id.* *Wright* is distinguishable because it involves a claimant (to whose benefit *York* wholly inured) attempting to overturn a finding of rebuttal, rather than an employer (whose burden the retroactive application of *York* made significantly greater) attempting to prove rebuttal. This Court in *Wright* held that evidence regarding causation of disability only applied to (b)(3), but that substantial evidence supported the

ALJ's finding under (b)(3) that the claimant's disability was due to heart disease and not pneumoconiosis. *Id.* *York*'s modification of the (b)(2) standard—that causation evidence was henceforth inappropriate—did not affect the fact that the employer had already presented sufficient causation evidence to the ALJ under (b)(3).

The Director, Officer of Worker's Compensation Programs, Department of Labor, argues that *Harlan Bell* is distinguishable because the employer in that case made a "timely request for an opportunity to address the post-*York* standards." *Harlan Bell,* 904 F.2d at 1047. In the case at bar, for the twenty-six and one-half months between the Board's final remand and the ALJ's second decision, Peabody failed to take action. The Director argues that Peabody waived its rights under *Harlan Bell* because it did not request an opportunity to file a brief or reopen the record for development of new evidence. Had Peabody done so, the Director concedes that *Harlan Bell* would require reopening of the record for "development of new evidence pertinent to the *York* standard."

Peabody, however, did ask the Board for a new trial in its Motion for Reconsideration, served on February 11, 1988:

12. Finally, in a case controlled by *York,* it is the law in the Sixth Circuit that evidence considered prior to *York* under (b)(2) pertaining to the severity of the miner's respiratory impairment is now properly considered under § 727.203(b)(3). *Wright v. Island Creek Coal Co.,* 824 F.2d 505 (6th Cir.1987). Since the ALJ did not consider (b)(2) evidence in the proper fashion, she should be ordered to do so on remand to preserve fairness. Moreover, because the change in the law is so dramatic, the Board is required by Sixth Circuit precedent to offer the parties an opportunity for a new trial. *Tackett v. Benefits Review Board,* 806 F.2d 640 (6th Cir. 1986).

The Board denied Peabody's request, stating that the ALJ's finding regarding (b)(3) "has not been challenged on appeal, and we,

---

1. We further held that the Board "engaged in a de novo review of the facts and clearly exceeded its statutory authority." *Harlan Bell,* 904 F.2d at 1046.

therefore, will not disturb this finding." The ALJ, in her second opinion, echoed the Board: "The BRB affirmed, as unchallenged on appeal, the Administrative Law Judge's findings that rebuttal was not established pursuant to [ (b)(3) ]."

We decline to find that Peabody waived its right to argue that the ALJ must rehear the case. Furthermore, we note that the ALJ obviously accepted the Board's reasoning on this subject, which probably rendered Peabody's continued objections futile. *See Kyle v. Director, OWCP,* 819 F.2d 139, 142 (6th Cir.1987) (permitting the petitioner to raise an argument for the first time on appeal because the Board consistently rejected the petitioner's argument), *cert. denied,* 488 U.S. 997, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988).

Because the change in (b)(2) altered the significance of (b)(3), Peabody did not waive its rights under *Harlan Bell* and deserves a new trial. Otherwise, Peabody is unfairly bound by its election, made prior to *York,* to argue that no disability existed. By making rebuttal under (b)(2) more difficult to achieve, *York* made rebuttal under (b)(3) more attractive by comparison. Forcing Peabody to abide by its pre-*York* election to rebut primarily under (b)(2)—just like forcing Peabody to rest on proof offered under the pre-*York* (b)(2) rebuttal standard—creates a "manifest injustice" when the ALJ reconsiders the case under *York.*

### III.

Finally, we reject Peabody's argument that the Supreme Court's decision in *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991) "raises serious questions about the correctness of *York.*" First, *Pauley* did not overrule *York.* Second, this panel lacks the ability to overrule *York.* Third, as recently as March 14, 1995, this Court specifically declined to reverse *York. Youghiogheny & Ohio Coal Co. v. Webb,* 49 F.3d 244, 249 n. 7 (6th Cir.1995).

■ We also want to make it clear that we do not remand the case because the ALJ applied the now-obsolete "true doubt rule" to invoke the interim presumption under (a)(1). In *Director, OWCP v. Greenwich Collieries,*

—— U.S. ——, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994), the Supreme Court invalidated the "true doubt rule" and required a preponderance of the evidence in such situations. Even without the "true doubt rule," however, we find that a preponderance of the evidence here supports the ALJ's determination. The ALJ used the "true doubt rule" to resolve a tie in the ten x-ray readings performed by B-readers. The ALJ also determined that for the eight x-ray readings performed by Board-certified radiologists, six readings were positive and two readings were negative. Further, the record reveals that for the four x-ray readings performed by non-Board-certified radiologists and non-B-readers, three were positive and one negative. Therefore, out of a total of twenty-two x-ray readings, fourteen were positive and eight were negative. Because a preponderance of evidence supports the invocation of the interim presumption under (a)(1), *Greenwich Collieries* does not require that we remand this case.

### IV.

For the foregoing reasons, we **REVERSE** the Board's order and **REMAND** the case to the ALJ for a new trial.