**HARLAN BELL COAL CO. and Old Republic Insurance Company, Petitioners,**

**v.**

**Dewey LEMAR, Respondent.**

**No. 89–3529.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 5, 1990.

Decided June 8, 1990.

Laura Metcoff Klaus, Mark E. Solomons (argued), and Arter & Hadden, Washington, D.C., for petitioners.

John C. Carter (argued), Harlan, Ky., Michael J. Denney, Rae Ellen Frank James, and Irene B. Wozny, U.S. Department of Labor, Office of the Sol., Washington, D.C., for respondent.

Before KEITH and NORRIS, Circuit Judges, and JOINER, Senior District Judge.[*]

KEITH, Circuit Judge.

The petitioners, Harlan Bell Coal Co. and Old Republic Insurance Companies (collectively "Harlan Bell"), appeal from the decision and order of the Benefits Review Board ("the Board"), granting the black lung benefits claim of Harlan Bell's former employee, respondent Dewey Lemar ("Lemar"). For the reasons stated below, we Reverse and Remand.

I.

On January 28, 1980, Lemar submitted an application for disability benefits, pursuant to the Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901–945 ("the Act"). Lemar claimed that he suffered from respiratory and pulmonary impairments. On November 3, 1981, the Department of Labor's Office of Workers' Compensation Programs ("the OWCP") determined that Lemar was not entitled to benefits because: first, he established only seven years of employment in the coal mines; and second, he failed to show that he was rendered incapable of performing coal mine work

---

[*] Hon. Charles W. Joiner, Senior District Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

due to a totally disabling respiratory or pulmonary impairment.

Lemar terminated his coal mine employment on March 17, 1983, when he suffered a serious back injury. Lemar's claim was referred to an Administrative Law Judge ("ALJ") on January 25, 1985. Lemar's claim was contested by his employer, Harlan Bell, and the Director, OWCP ("the Director").

The ALJ heard oral argument from the parties on February 25, 1987. Contrary to the initial determination of the DOL, the ALJ found that Lemar had established fifteen years of coal mine employment.[1] Because Lemar filed his claim prior to April 1, 1980 and produced an X-ray that was interpreted positive for pneumoconiosis by Dr. Brent Brandon,[2] the ALJ determined that Lemar had invoked the interim presumption under 20 C.F.R. § 727.203(a)(1).[3] The ALJ went on to find, however, that the presumption was rebutted pursuant to § 727.203(b)(2):[4]

> Subsection (b)(2) permits rebuttal by showing that the miner is able to do his usual coal mine work or comparable gainful work. The [Board] has held that this may be done by proving that the miner did not suffer from a respiratory or pulmonary impairment or by showing that such impairment was not totally disabling ...

> [Lemar's] pulmonary function study and arterial blood gas study of record, combined with the examination of Dr. [Kathy] Caizzi establish only a mild obstructive defect. Based on the objective studies of record and the evaluation by Dr. Caizzi, [I] conclude that [Lemar] does not suffer from a totally disabling respiratory or pulmonary impairment which would render him unable to perform his usual coal mine work or similar work activity. I find that [Lemar] left his last coal mine work due to a back injury and not because of breathing difficulties.

Joint Appendix at 17 (quoting *Lemar v. Harlan Bell*, No. 85–BLA–2048 (DOL Nov. 13, 1987) (order denying black lung benefits) (citations omitted)). The ALJ concluded that the totality of the evidence indicated that Lemar retained a residual functional capacity to perform his usual coal mine work or comparable employment.

At the time of Lemar's ALJ hearing, a showing that a miner was not rendered incapable of performing his usual coal mine work or comparable work because of a respiratory or pulmonary impairment was sufficient to rebut the interim presumption. *See* 20 C.F.R. § 727.203(b)(2); *Sykes v. Itmann Coal Co.*, 2 Black Lung Rep. (MB) 1–1089, 1–1094 (Ben.Rev.Bd.1980); *Johnson v. Cannelton Industries, Inc.*, 2 Black Lung Rep. (MB) 1–1081, 1–1085 (Ben.Rev. Bd.1980). However, on May 18, 1987, after

---

1. At his hearing before the ALJ, Lemar testified that he had worked intermittently in the mines since 1947. The ALJ found that Lemar drove a truck between the mines during most of his coal mine employment. Lemar's last mining job, as a belt tender, required him to break up large rocks with a sledge hammer and to load the rocks onto a conveyor belt.

2. Dr. Brandon is a B-reader, having demonstrated his proficiency in assessing and classifying x-ray evidence of pneumoconiosis by completing a National Institute of Occupational Safety and Health examination. Because of their superior qualifications, great weight is generally given to the testimony of B-readers. *See Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 145 n. 16, 108 S.Ct. 427, 432 n. 16, 98 L.Ed.2d 450 (1987).

3. 20 C.F.R. § 727.203(a)(1) provides that:

 (a) *Establishing interim presumption.* A miner who engaged in coal mine employment

for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis ...

4. 20 C.F.R. § 727.203(b)(2) provides, in pertinent part, that:

 (b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The [§ 727.203(a) ] presumption ... shall be rebutted if:

 . . . . . .

 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...

the record in Lemar's case was closed but before the ALJ had issued an order, this court held in *York v. Benefits Review Bd.*, 819 F.2d 134 (6th Cir.1987), that the interim presumption may not be rebutted if the miner is disabled for any reason, whether or not respiratory or pulmonary impairments are implicated. In *York*, we concluded that:

> [I]n order for the Director or employer to rebut a miner's presumed entitlement to benefits as established by § 727.203(a), they must establish, under rebuttal provision § 727.203(b)(2), that the miner is able to do his usual coal mine work or comparable and gainful work. They cannot merely rely upon a showing that the miner was not totally disabled by the respiratory impairment alone. Rather, they must show the miner is not disabled.

819 F.2d at 138.

In the present case, the ALJ issued an opinion and order denying Lemar's claim for black lung disability benefits on November 13, 1987. Because the ALJ failed to apply the post-*York* standards, Lemar appealed the ALJ's decision to the Board.

In his petition before the Board, Lemar argued that the ALJ erred in failing to apply *York* in his § 727.203(b)(2) rebuttal analysis. In response, Harlan Bell argued that if the Board found *York* dispositive, then the case should be remanded to the ALJ because the new standards announced in *York* had substantially undermined Harlan Bell's defense. Harlan Bell also contended that the ALJ's findings should be deemed adequate to support rebuttal of the interim presumption under § 727.203(b)(3).[5]

On December 28, 1988, the Board reversed the decision and order of the ALJ. The Board did not address Harlan Bell's request for a new trial, but did indicate that the record evidence was inadequate, as a matter of law, to demonstrate rebuttal under § 727.203(b)(3). Addressing the issue of rebuttal under § 727.203(b)(2), the

Board found that Lemar suffered from back and heart problems, as well as a respiratory or pulmonary disability. Thus, the Board concluded that, under the post-*York* standards, the medical evidence of Lemar's disabling back, heart, and respiratory or pulmonary impairments precluded rebuttal of the interim presumption. The Board subsequently remanded Lemar's case for the entry of a benefit award.

On January 25, 1989, Harlan Bell filed a motion for reconsideration of the Board's order. Harlan Bell maintained that it was entitled to a remand for a new trial and a fair opportunity to respond to the substantial changes in interim presumption law brought about by *York*. The Board denied Harlan Bell's motion for reconsideration on April 27, 1989. The Board, citing *Lynn v. Island Creek Coal Co.*, 12 Black Lung Rep. (MB) 1–146 (Ben.Rev.Bd.1989), concluded that there was no impropriety in its application of intervening case law without providing Harlan Bell the opportunity to present evidence under the new standard.

On June 16, 1989, Harlan Bell filed a timely appeal with this court.

### II.

In *Welch v. Benefits Review Bd.*, 808 F.2d 443 (6th Cir.1986), we stated that:

> This court has a limited scope of review over the decisions of the Benefits Review Board. The Board itself may set aside an administrative law judge's findings of fact and conclusions of law only if they are not supported by substantial evidence, or not in accordance with law. Our scope of review is limited to scrutinizing Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations. *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1116 (6th Cir.1984), *cert. denied*, 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985).

---

5. 20 C.F.R. § 727.203(b)(3) explains that the § 727.203(a) presumption shall be rebutted if:

 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment …

*Welch,* 808 F.2d at 445. Thus, both this court and the Board examine the ALJ's decision to determine whether it is consistent with the Act and "supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). *See Warman v. Pittsburg & Midway Coal Mining Co.,* 839 F.2d 257, 258 (6th Cir. 1988).

The Black Lung Benefits Act was enacted to "provide benefits ... to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease." 30 U.S.C. § 901(a). Under the Act, pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b).

### III.

### A.

On appeal, Harlan Bell argues that the Board erred by not remanding the present case to the ALJ for reconsideration under the standards established in *York v. Benefits Review Bd.,* 819 F.2d 134 (6th Cir. 1987). Harlan Bell initially contends that by usurping the ALJ's factfinding function, the Board clearly exceeded the scope of its statutory authority. Lemar responds that because a remand to the ALJ for additional factfinding would not have produced a different result, the Board did not err in granting his benefit award. We disagree.

■ In *Director, OWCP v. Rowe,* 710 F.2d 251 (6th Cir.1983), we emphasized that the Board's primary function is to review the ALJ's decision for errors of law. *See id.* at 254. Although the Board may appropriately determine whether the ALJ's factual findings are supported by substantial evidence, the Board is not empowered to engage in a *de novo* review of the facts. *See id.;* 33 U.S.C. § 921(b)(3); 20 C.F.R. § 802.301(a). If the ALJ fails to consider important facts or incorrectly reviews the record, then the Board may properly remand the case with appropriate instruc-

tions for further review by the ALJ. *See Rowe,* 710 F.2d at 255.

■ If the ALJ or the Board has erred by ignoring important facts or reviewing evidence under an incorrect legal standard, then we must remand the case for additional proceedings. *See Freeman v. Director, OWCP,* 781 F.2d 79, 83 (6th Cir.1986). Where the applicable law has changed prior to the closing of the trial record, it is especially appropriate to remand the case and to allow both parties to present proof directed at the new legal standard. *See Tackett v. Benefits Review Bd.,* 806 F.2d 640, 642 (6th Cir.1986).

■ In the present case, the Board overstepped its statutory authority by usurping the ALJ's factfinding function. After evaluating the record evidence, the ALJ concluded that Lemar retained the pulmonary capacity to perform his usual coal mine work or comparable gainful work. The ALJ determined that Harlan Bell had established rebuttal under § 727.203(b)(2), and thus, Lemar was not entitled to benefits. The ALJ, however, did not consider whether or not Lemar was disabled by reason of a non-pulmonary or non-respiratory impairment. Moreover, the ALJ did not evaluate comprehensively Lemar's claim under the rebuttal standard of § 727.203(b)(3). Most importantly, the ALJ did not consider Lemar's claim under the post-*York* standards.

When the Board discovered that the record evidence had not been reviewed under § 727.203(b)(3) nor the post-*York* standards, the Board should have remanded the case and instructed the ALJ to review it under the correct legal standards. *See Tackett,* 806 F.2d at 642; *Freeman,* 781 F.2d at 83. The Board, however, chose to weigh the record evidence *de novo* and to conclude that Harlan Bell did not establish rebuttal under *York.* Without granting Harlan Bell the opportunity to supplement the record with proof directed at the post-*York* standards, the Board reversed the ALJ's determination that Lemar was not entitled to benefits. Because the Board engaged in a *de novo* review of the facts and clearly exceeded its statutory authori-

ty, the present case warrants reconsideration by the ALJ.[6]

### B.

 Harlan Bell does not dispute the applicability of the post-*York* standards to the present case. *See e.g., Bradley v. Richmond School Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) (holding that the law in effect at the time of decision must be applied unless doing so would result in manifest injustice or there is a statutory directive to the contrary). However, because *York* was decided after the ALJ hearing and the parties were then precluded from offering proof directed at the new standards, Harlan Bell contends that the Board's refusal to remand and allow the presentation of additional proof was arbitrary and unreasonable. Lemar responds that it would be unreasonable to allow Harlan Bell to reopen the record. We disagree.

In *Tackett v. Benefits Review Bd.,* 806 F.2d 640 (6th Cir.1986), we remanded a black lung disability case to the ALJ and granted the miner's survivor an opportunity to present proof directed at a new interpretation of the law, thus preventing "manifest injustice." *See id.* at 642. In *Tackett,* the ALJ reviewed evidence of the miner's lung cancer; deemed lung cancer a chronic lung disease as a matter of law; invoked a statutory presumption of death due to pneumoconiosis; and granted benefits to the miner's survivor. On appeal, both parties in *Tackett* argued their positions before the Board. However, before a decision was issued, the Board reversed its previous interpretation of the law and ruled, in an unrelated matter, that before

the statutory presumption may be invoked, a petitioner must *prove* that the miner's lung cancer was a chronic lung disease. *See id.* at 641. When *Tackett* reached our court, we concluded that:

> [A]pplying the [new] rule ... does not result in manifest injustice if petitioner has the opportunity to present proof that the miner's lung cancer constituted chronic lung disease and suggests a reasonable possibility that death was due to pneumoconiosis. The Board concluded that claimant did not meet this requirement because the miner's lung cancer was not described as chronic. As petitioner points out, there was no reason for her to provide testimony on this issue [given] the law at the time of the hearing.... Accordingly, a remand to the ALJ is necessary.

*Tackett,* 806 F.2d at 642. *See also Marx v. Director, OWCP,* 870 F.2d 114, 121 (3d Cir.1989) (where *Tackett* was decided after the ALJ hearing in Marx's action for survivor's benefits, remand was appropriate to give her an opportunity to introduce evidence to satisfy the new legal standard).

In the present case, Harlan Bell made a timely request for an opportunity to address the post-*York* standards. Although Harlan Bell's petition for remand to the ALJ was consistent with the approaches taken in *Tackett* and *Marx,* the Board summarily denied Harlan Bell's request. Both the Board and Lemar have consistently maintained that the existing record cannot support § 727.203(b)(2) rebuttal; thus, remand would be unreasonable and unwarranted. We find little merit in this position. First, before the advent of *York,* the

---

**6.** Although the Board argues that it would be impossible for Harlan Bell to establish rebuttal under the post-*York* standards, we find this argument unpersuasive. Because the ALJ tried this case prior to *York* and did not apply the post-*York* standards, Harlan Bell has never had an opportunity to present evidence to rebut Lemar's claim under the new standards. Moreover, this case may be distinguished from *Ross Coal Co. v. Neal,* 894 F.2d 408 (6th Cir.1990) (unpublished per curiam), where we rejected the employer's argument that fundamental fairness *required* a new trial on the question of § 727.203(b)(2) rebuttal under the post-*York*

standards. In *Ross Coal,* overwhelming evidence had been presented that the miner was disabled due to cancer. Given the quality of the record evidence, we remanded and granted the ALJ the *option* of conducting a new trial or simply reexamining the record under § 727.203(b)(3). In contrast, the evidence supporting Lemar's claims of back and heart problems is readily subject to rebuttal. Thus, fundamental fairness would best be served in the present case by remanding to the ALJ for consideration under § 727.203(b)(3), as well as § 727.203(b)(2) in light of *York.*

ALJ found that the record evidence *did* establish § 727.203(b)(2) rebuttal. At that time, it was unnecessary for Harlan Bell to respond to Lemar's claims of heart and back impairments because the record evidence failed to meet the regulatory and pre-*York* requirement that Lemar be "totally disabled by the respiratory impairment alone." *York,* 819 F.2d at 138. *See also* 20 C.F.R. § 727.203(a)(1). Second, in light of the post-*York* standards, it is entirely reasonable to now grant Harlan Bell an opportunity to reestablish § 727.203(b)(2) rebuttal or to establish § 727.203(b)(3) rebuttal. Third, because the legal standards changed after Lemar's ALJ hearing, a manifest injustice would result if Harlan Bell were denied the opportunity to rebut evidence of Lemar's disabling back, heart, and respiratory or pulmonary impairments. Fundamental fairness requires that Harlan Bell be granted an opportunity to address comprehensively the post-*York* standards. *See Tackett,* 806 F.2d at 642; *Marx,* 870 F.2d at 121.

### C.

Harlan Bell also argues that its rights guaranteed by the due process clause of the fifth amendment were violated by the Board's failure to remand this case to the ALJ. In response, Lemar argues that Harlan Bell's opportunity to present evidence at the initial ALJ hearing was sufficient. We disagree.

The due process clause requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). The required notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. This opportunity for hearing "embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them." *Morgan*

*v. United States,* 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938). *See also Ralpho v. Bell,* 569 F.2d 607, 628 (D.C.Cir. 1977) ("An opportunity to meet and rebut evidence utilized by an administrative agency has long been regarded as a primary requisite of due process.").

The Black Lung Benefits Act, as implemented through federal regulations and DOL administrative procedures, must specifically conform to the due process requirements of the fifth amendment. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) ("[P]rocedural due process is applicable to the adjudicative administrative proceeding....."); *Jordan v. Director, OWCP,* 892 F.2d 482, 488 (6th Cir.1989) (holding that the due process clause was not violated where Director's letter to miner's survivor clearly explained reasons for the denial of her application for black lung benefits and her right to obtain a representative; to submit additional evidence; and to request a hearing); *Warner Coal Co. v. Director, OWCP,* 804 F.2d 346, 347 (6th Cir.1986) (holding that the Black Lung Benefits Act follows the due process clause and requires that the employer "be given adequate notice and an opportunity to defend"); *Coughlan v. Director, OWCP,* 757 F.2d 966, 969 (8th Cir.1985) ("Fundamental concepts of fairness require that litigants be given equal opportunities to present their respective positions."); 20 C.F.R. § 725.455(c) (stating that the miner or the miner's survivor and the employer shall be afforded "an opportunity for a fair hearing").

The Third Circuit has held, in *North American Coal Co. v. Miller,* 870 F.2d 948 (3d Cir.1989), that after an ALJ conducts a hearing and enters a black lung benefit award, an employer, under certain circumstances, retains a due process right to have the record re-opened; to cross-examine new witnesses; and to submit reports to rebut the medical evidence justifying the benefit award. *See id.* at 951.

In *North American Coal,* the ALJ denied the employer's request to depose an examining physician and to re-open the

record after the hearing. In addition, the ALJ denied the employer's request to submit medical evidence to rebut the examining physician's report, as the evidence had not been sent to the parties twenty days prior to the hearing. *See id.* at 949. *See also* 20 C.F.R. § 724.456(b). The Board affirmed the ALJ's order granting benefits. The Third Circuit, however, vacated the judgment of the Board. First, the court concluded that to protect the due process rights of both parties, the employer's request to depose and to cross-examine the physician should have been granted. *See North American Coal,* 870 F.2d at 951 (citing the Administrative Procedure Act, 5 U.S.C. § 556(d) ("A party is entitled to present his case or defense by oral and documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts.")).[7] Second, the court concluded that it was error for the ALJ to deny the employer's request to submit additional medical evidence to rebut the physician's testimony, as the additional evidence was necessary for a fundamentally fair presentation of both the miner's *and* the employer's positions. *See North American Coal,* 870 F.2d at 952. *See also* Ramsey and Haberman, *The Federal Black Lung Program—The View From the Top,* 87 W.Va.L.Rev. 575, 586 (1985) ("While the conduct of a hearing is within the sound discretion of the administrative law judge, the judge is obliged, above all, to ensure that all parties have the opportunity to fully present their case by way of argument, proof and cross-examination of the witness.").

Because Harlan Bell's right to a hearing encompasses not only the right to present evidence, but also the right to rebut the claims of Lemar under the correct legal standards, due process considerations persuade us that it was error for the Board to deny Harlan Bell an ALJ hearing under the post-*York* standards. *See Morgan,* 304 U.S. at 18, 58 S.Ct. at 776. Harlan Bell must be granted an opportunity to present evidence directed at the post-*York* standards as such evidence is necessary to the full presentation of Harlan Bell's defense. *See Warner Coal Co.,* 804 F.2d at 347; 20 C.F.R. § 725.455(c).

Although the employer in *North American Coal* was deprived of the opportunity to rebut adverse evidence at its original ALJ hearing, Harlan Bell presents an even more compelling justification for remand: it has been effectively deprived of the opportunity to rebut evidence now supporting issues that did not exist at the time of its ALJ hearing. When Harlan Bell and Lemar initially presented their arguments to the ALJ, evidence of Lemar's heart and back impairments were of little relevance, given the pre-*York* standards' emphasis on respiratory or pulmonary impairments. *See York,* 819 F.2d at 138. The advent of the post-*York* standards, however, made evidence of Lemar's heart and back impairments not only relevant, but outcome determinative. *See id.* at 138–39. Lemar has had ample opportunity to evidence all of his impairments. Harlan Bell is now entitled to an "equal opportunity" to rebut evidence of Lemar's disabling heart, back, and respiratory or pulmonary impairments, pursuant to the post-*York* standards. *See Coughlan,* 757 F.2d at 969.

It may be argued that our reversal of the Board in the present case will raise the spector of a never ending series of reopened records and additional ALJ hearings. This argument, however, is unpersuasive. "[W]hile the ALJ must admit evidence 'required for a full and true disclosure of the facts,' the ALJ is free to exclude 'irrelevant, immaterial or unduly repetitious evidence.' " *North American Coal,* 870 F.2d at 952 (quoting the Administrative Procedure Act, 5 U.S.C. § 556(d)).

In *Kolesar v. Youghiogheny & Ohio Coal Co.,* 760 F.2d 728 (6th Cir.1985), we recalled that Congress's intent in enacting the Black Lung Benefits Act was "to pro-

---

7. The requirements of the Administrative Procedure Act are made applicable to DOL black lung benefit claim adjudications by the Longshoremen's and Harbor Workers' Compensation Act.

See 33 U.S.C. § 919(d) as incorporated by 30 U.S.C. § 932(a); 20 C.F.R. §§ 725.455(b) and 725.477(b).

vide *comfort* through financial numeration" to those coal miners who are totally disabled due to pneumoconiosis. *See id.* at 729 (emphasis added); 30 U.S.C. § 901(a). It is beyond dispute that benefits to miners disabled by black lung disease should be readily available and liberally awarded. *See id.* at 729–30. Our opinion today, however, should not in any way detract from our emphasis in *Kolesar.* The due process clause of the fifth amendment, which persuades us in the present case to grant the remand requested by the coal mine company, also accords to coal miners and their survivors the protections of the Constitution.

### IV.

Accordingly, we Reverse the order of the Benefits Review Board because Harlan Bell was afforded no opportunity to rebut Lemar's claims with proof directed at the post-*York* standards. We Remand this case to the Board with instructions to send this matter to the ALJ for further proceedings consistent with this opinion.