947 F.2d 944
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CONSOLIDATION COAL CO., Petitioner,
v.
John RUSIECKI, Respondent,
and
Director, Officer of Workers' Compensation Programs, United
States Department of Labor, Party-in-Interest.
 No. 90-4078.
 United States Court of Appeals, Sixth Circuit.
 Oct. 25, 1991.
 
 Before RALPH B. GUY, Jr. and BOGGS, Circuit Judges, and McRAE, Senior District Judge*
 PER CURIAM.
 
 
 1
 Consolidation Coal Company appeals a decision of the Benefits Review Board upholding an award of benefits to Mr. Rusiecki. It maintains that the Board erred in its review of the Administrative Law Judge by misinterpreting certain regulations governing eligibility for black lung benefits. We consider any errors the Review Board may have made to be harmless; therefore, we affirm the award of benefits.
 
 
 2
 * John Rusiecki worked in the coal industry for over forty years, and for most of that period he was employed by the Consolidation Coal Company in and around New Athens, Ohio. He stopped working on August 31, 1977, and on May 23, 1978, he applied to the Department of Labor for benefits pursuant to the Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901-50. After a number of preliminary meetings, Consolidation Coal requested a formal hearing on the matter. Administrative Law Judge Charles Campbell presided over the hearing on February 26, 1981, in Steubenville, Ohio.
 
 
 3
 At the hearing, Mr. Rusiecki testified that his entire coal mine employment took place underground, that during most of his career he served as a foreman, and that his work exposed him to large quantities of coal dust. He described breathing problems, which had bothered him for the past twelve to fourteen years, and had grown worse over time. He also told of injuring his back in 1958 while working in the mines, and noted that his back problems had required operations in 1974, 1977, and 1980. He admitted that he had filled out an application in which he claimed that his back problems had forced him to stop working, but he insisted that even with a healthy back, his breathing problems would have forced him to quit. Besides the testimony of Mr. Rusiecki, Judge Campbell considered a number of medical reports in reaching his conclusion. The earliest of these dated from February 29, 1960, when Mr. Rusiecki went to The Wheeling Clinic for help with his back ailments. This report did not mention pulmonary problems. In December 1978, he was again examined for back problems; an x-ray was taken, but the report does not mention active pulmonary disease.
 
 
 4
 On January 9, 1979, Dr. Aniceto P. Carneiro examined Mr. Rusiecki. Dr. Carneiro considered Mr. Rusiecki's symptoms, his smoking, an examination, and an x-ray; he diagnosed emphysema, chronic bronchitis, and probable coal worker's pneumoconiosis (black lung). He also concluded that "[t]his patient is totally and permanently disabled from further coal mine employment."
 
 
 5
 Dr. George O. Kress examined Mr. Rusiecki on May 1, 1979, at the behest of Consolidation Coal. Based on his examination, including an x-ray, he diagnosed mild chronic bronchitis, moderately severe uncontrolled hypertension, and exogenous obesity. He also noted that the x-ray used in Dr. Carneiro's report had been re-read by a "B-reader" and found to be completely negative. Dr. Kress considered this re-reading significant, since a B-reader is a radiologist who has demonstrated proficiency in classifying x-ray evidence of black lung by successfully completing a Department of Health and Human Services test. Dr. Kress concluded "that this man does not present sufficient objective medical evidence to justify a diagnosis of coal workers' pneumoconiosis," and stated "I do not believe that he has any pulmonary or respiratory impairment." He also found that Mr. Rusiecki could not continue working due to his back problems.
 
 
 6
 Consolidation Coal also presented a report from Dr. W.K.C. Morgan, dated April 10, 1980. Dr. Morgan is a distinguished practitioner in the study of black lung, but did not examine Mr. Rusiecki. Instead, he based his conclusions on Dr. Kress's report and the 1960 and 1978 back reports. While admitting that he had not seen a B-reader's interpretation, he said "I very much doubt that he has pneumoconiosis since the X-ray interpretations from Wheeling and he was [sic] elsewhere in hospital were negative." He also found that "there is no evidence of any respiratory impairment in this man and there is nothing to suggest that he has any occupationally related pulmonary impairment." However, Dr. Morgan assumed that a foreman would not be exposed to high levels of coal dust, a conclusion Mr. Rusiecki strongly denies. Dr. Morgan also stated that Mr. Rusiecki "does have longstanding back trouble and this might well compromise his ability to work."
 
 
 7
 Finally, Judge Campbell considered a report from Dr. F.V. Lavapies, who examined Mr. Rusiecki on January 2, 1980. Dr. Lavapies considered a chest x-ray that disclosed findings compatible with black lung, performed a pulmonary function test, and analyzed the claimant's arterial blood gases. He determined that his findings "would be consistent with chronic obstructive pulmonary disease. (A) Pneumoconiosis. (B) Pulmonary emphysema." He also concluded that "[t]he patient is a candidate for total and permanent disability based on presence of pneumoconiosis and progressive clinical findings and symptoms."
 
 
 8
 Having analyzed this information, Judge Campbell issued a decision and order awarding benefits on September 17, 1981. This decision began a nine-year period during which this case shuttled between the Benefits Review Board and Judge Campbell. During this period, no new hearings were held, and neither party presented new data. Finally, on September 18, 1989, the Review Board affirmed the ALJ's third order awarding benefits. Consolidation Coal asked the board to reconsider its decision, and on November 7, 1990, it re-affirmed Judge Campbell's award. Consolidation Coal appealed this decision to this court.
 
 II
 
 9
 The appeal in this case involves the Review Board's reading of certain regulations. As we have stated, "the courts of appeals retain the plenary authority to review the Board's legal conclusions." Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1119 (6th Cir.1984), cert. denied, 471 U.S. 1116 (1985); see also Brown Badgett, Inc. v. Jennings, 842 F.2d 899, 901 (6th Cir.1988)
 
 
 10
 This case turns on the proper construction of 20 C.F.R. § 727.203 (1991). The Secretary of Labor promulgated these regulations in 1978 to govern the processing of claims for black lung benefits filed between July 1, 1973, and April 1, 1980. They apply to this case because Mr. Rusiecki filed his claim on May 23, 1978. To be eligible for disability benefits, a miner must demonstrate that (a) he is totally disabled; (b) the disability was caused, at least in part, by black lung, and (c) the disability arose out of coal mine employment. Section 727.203 establishes a system of presumptions and rebuttals to determine whether these factors have been met. To invoke its provisions, a miner must demonstrate that he was engaged in coal mine employment for at least ten years. Once he has done so, § 203(a) presumes that he qualifies for disability benefits if one of four conditions exists: (a)(1) a chest x-ray, biopsy, or autopsy establishes the existence of pneumoconiosis; (a)(2) ventilatory studies prove the presence of a respiratory or pulmonary disease of certain severity; (a)(3) blood gas studies show an impairment in the transfer of oxygen from the lungs to the blood; or (a)(4) other medical evidence, including the documented opinion of a physician, demonstrates a totally disabling respiratory impairment.
 
 
 11
 If an interim presumption is established, based on any one of the four conditions above, the employer may attempt to rebut the presumption under § 203(b), which provides that "all medical evidence shall be considered." Rebuttal occurs if any one of the following four conditions is established: (b)(1) the claimant is doing his usual coal mine work or comparable and gainful work; (b)(2) the claimant is capable of performing such work; (b)(3) coal mining had nothing to do with the claimant's disability; or (b)(4) the miner does not have pneumoconiosis.
 
 
 12
 In this case, the Administrative Law Judge found that the (a)(1) presumption had been invoked, based on his weighing of the x-ray evidence. This finding has not been appealed. Consolidation Coal attempted to rebut this presumption under (b)(2), (b)(3), and (b)(4); but its arguments were rejected. Consolidation Coal now maintains that both Judge Campbell and the Review Board misconstrued the law involving rebuttal.
 
 
 13
 First, Consolidation Coal claims that the agencies used an improper legal standard in rejecting its offer of (b)(4) proof. In his final order, the administrative law judge concluded that (b)(4) rebuttal was not present:
 
 
 14
 Rebuttal is also not established under subparagraph (b)(4) because the weight of the evidence fails to establish that the claimant does not have pneumoconiosis. In fact, the weight of the X-ray evidence indicates that he does have pneumoconiosis.
 
 
 15
 On appeal, the Review Board upheld this conclusion, but held that even the brief analysis given by Judge Campbell was unnecessary.
 
 
 16
 Finally, employer argues that the administrative law judge did not adequately consider subsection (b)(4) rebuttal in accordance with the requirement of the Administrative Procedure Act. We need not address this argument since subsection (b)(4) rebuttal is precluded where invocation of the interim presumption is establish [sic] under Section 727.203(a)(1).
 
 
 17
 On reconsideration, the Review Board outlined its position more fully on this issue. "The United States Supreme Court in [ Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, 484 U.S. 135 (1987) ] clearly held that if a claimant establishes invocation of the interim presumption pursuant to Section 727.203(a)(1), the party opposing entitlement may not try to disprove the existence of pneumoconiosis pursuant to Section 727.203(a)(1)."
 
 
 18
 Consolidation Coal disputes this interpretation of Mullins, and to understand its arguments requires a discussion of that case. Mullins involved the standard of proof necessary to invoke the interim presumption of disability under § 203(a). The Fourth Circuit had held that a single item of qualifying evidence was always sufficient to invoke the presumption. The Supreme Court reversed. It concluded that § 203(a) requires that the claimant establish any one of the qualifying conditions by a preponderance of the evidence. In the course of its opinion, the Supreme Court dealt with the Fourth Circuit's concerns about a preponderance standard. For example, the Fourth Circuit interpreted § 203(b)'s provision that "all relevant medical evidence shall be considered" to require this evidence to be considered on rebuttal. But it also concluded that under a preponderance standard, some evidence would be inadmissible for certain aspects of rebuttal. Therefore, it determined that a preponderance standard would violate § 203(b). The Supreme Court rejected this construction of § 203(b). It concluded that "nothing in the regulation requires all relevant medical evidence to be considered at the rebuttal phase; such evidence must simply be admissible at some point during the proof process." 484 U.S. at 150. As for the preponderance standard's making some rebuttal provisions superfluous, the Court agreed that such superfluity could occur. However, it determined that "[n]othing in the regulation requires each rebuttal subsection to be fully available in each case." Ibid. (emphasis in original).
 
 
 19
 In the course of this discussion, the Court gave several examples of situations in which certain rebuttal provisions would be rendered superfluous. One of these examples has bred the current controversy: "For instance, if the claimant invokes the presumption by establishing the existence of pneumoconiosis under § (a)(1), the employer may not try to disprove pneumoconiosis under § (b)(4)." Ibid. Footnote 26 of the Court's opinion gives a fuller explication of this example:
 
 
 20
 Based on current medical knowledge, X-ray, biopsy, and autopsy evidence are today the only reliable evidence for diagnosing pneumoconiosis. Therefore, after a Subsection (a)(1) invocation, the question of pneumoconiosis is effectively closed: the rebutting party cannot, as a practical matter, attempt to show that the miner does not suffer from some form of clinical pneumoconiosis.
 
 
 21
 484 U.S. at 150, n. 26, quoting Brief for Federal Respondent 24, n. 22. The Review Board in its opinions relied on these parts of Mullins, which, it claims, preclude Consolidation Coal from presenting any (b)(4) evidence once an (a)(1) presumption has been established.
 
 
 22
 Consolidation Coal disagrees. It points out that the Court's citation to the Brief for the Federal Respondent is incomplete, and that the quoted footnote ends with the following passage: "a physician's opinion on the cause of clinical pneumoconiosis ... would certainly be admitted in rebuttal." Petitioner's Brief at 16 n. 4. Consolidation Coal also argues that the examples given in the Supreme Court's opinion constitute dicta, which should not be given the weight of a holding. Alternatively, petitioner urges us to limit the Court's language so that only evidence that had been considered specifically under (a)(1) would be precluded from (b)(4) consideration. Mullins, 484 U.S. at 149 n. 24. Petitioner argues that this standard was not met by the ALJ in this case, since Drs. Kress and Morgan considered more data than just the x-ray evidence.
 
 
 23
 The Director of the Office of Workers' Compensation Programs and Mr. Rusiecki also present interpretations of Mullins. However, on the facts of this case, we need not decide whether the Review Board's reading of Mullins was correct. "[W]e may affirm the decision of the Board on grounds other than those stated by the Board." Director, Office of Workers' Compensation Programs v. Quarto Mining Co., 901 F.2d 532, 536 (6th Cir.1990). In his opinion below, Judge Campbell specifically found that "the weight of the evidence fails to establish that the claimant does not have pneumoconiosis." These factual conclusions carry great weight in this court. As a Sixth Circuit panel recently observed:
 
 
 24
 We must of course affirm the ALJ's factual determination if it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 
 25
 Tennessee Consol. Coal Co. v. Crisp, 866 F.2d 179, 184 (6th Cir.1989) (citation omitted). See also Wright v. Island Creek Coal Co., 824 F.2d 505, 507 (6th Cir.1987). After a careful consideration of the evidence, we believe that the Administrative Law Judge's factual determination is supported by substantial evidence, and must therefore be upheld by this court. Saginaw Mining Co. v. Ferda, 879 F.2d 198 (6th Cir.1989).
 
 
 26
 Judge Campbell's comments on (b)(4) are somewhat cursory, and do not present a lengthy discussion of each medical opinion. However, he obviously knew of and considered the opinions of Drs. Kress and Morgan. His opinion includes a chart that summarizes the x-ray evidence and includes the x-ray taken by Dr. Kress. He refers to the opinions of Drs. Kress and Morgan in his discussion of (b)(2) rebuttal. He also notes their opinions in his analysis of (b)(3) rebuttal. Finally, he makes the following statement:
 
 
 27
 Although the reports of Drs. Kress and Morgan are competent evidence, they must be weighed against other, contrary medical opinions. It is also noted that although the weight of the medical opinion evidence is too evenly divided to support invocation of the interim presumption under § 727.203(a)(4) [that the claimant is entitled to benefits], it is also too evenly divided to support rebuttal under § 727.203(b), particularly when the lay evidence of the claimant's respiratory impairments is also weighed, as it must be, on rebuttal.
 
 
 28
 We believe that this discussion of the medical evidence satisfies the requirements of the Administrative Procedure Act. 5 U.S.C. § 557(c)(3)(A). We affirm the Administrative Law Judge's conclusions on (b)(4) rebuttal, and therefore have no need to analyze the various interpretations of Mullins presented by the parties.
 
 III
 
 29
 Since the initial hearing, the Review Board and this court have issued numerous decisions interpreting the standards for rebuttal under §§ 727.203(b)(2) and (b)(3). Consolidation Coal now maintains that since these decisions have changed the interpretation of these subsection, the case should be remanded for the development of additional medical evidence to address the new interpretations.
 
 
 30
 In 1987, this court adopted an expanded interpretation of (b)(2). Under the standard applicable in 1981, an employer could rebut an interim presumption by proving that a claimant was not totally disabled by a respiratory impairment. Sykes v. Itmann Coal Co., 2 Black Lung Rep. (MB) 1-1089, 1094 (Ben.Rev.Bd.1980). However, in York v. Benefits Review Bd., 819 F.2d 134 (6th Cir.1987), this court held that § (b)(2) rebuttal cannot be established if the miner is totally disabled for any reason.
 
 
 31
 Consolidation now argues that this case should fall within the rule of Harlan Bell Coal Co v. Lemar, 904 F.2d 1042 (6th Cir.1990). In Harlan Bell, the Administrative Law Judge had applied the old (b)(2) standard to conclude that the employer had rebutted an interim presumption. However, between the time of the Administrative Law Judge's hearing and the date his decision appeared, this court issued its decision in York. Applying the new standard, the Review Board reversed the ALJ's holding. This court reversed and remanded, basing its decision largely on the due process clause of the Fifth Amendment:
 
 
 32
 Because Harlan Bell's right to a hearing encompasses not only the right to present evidence, but also the right to rebut the claims of Lemar under the correct legal standards, due process considerations persuade us that it was error for the Board to deny Harlan Bell an ALJ hearing under the post-York standards.
 
 
 33
 904 F.2d at 1049. See also Morgan v. United States, 304 U.S. 1, 18 (1938); Ralpho v. Bell, 569 F.2d 607, 628 (D.C.Cir.1977) ("An opportunity to meet and rebut evidence utilized by an administrative agency has long been regarded as a primary requisite of due process.")
 
 
 34
 However, the new standard of York does not require that we remand every case decided under the old rule. In Harlan Bell, we carefully distinguished the facts in that case from Ross Coal Co. v. Neal, No. 89-3296, slip op. (6th Cir. Jan. 26, 1990) (per curiam), noting that in Ross Coal, "overwhelming evidence had been presented that the miner was disabled due to cancer." 904 F.2d at 1047 n. 6. In contrast, as we noted, evidence of total disability presented by the miner in Harlan Bell was "readily subject to rebuttal." Ibid. The present case resembles Ross Coal much more closely than Harlan Bell. Every single doctor on the record, including those cited by Consolidation Coal, concluded that Mr. Rusiecki has been disabled by his back problems, if not by black lung. Moreover, the Administrative Law Judge consistently found that Consolidation Coal could not meet the older, more lenient (b)(2) standards: "the weight of the evidence fails to establish that the claimant is able to do his usual coal mine work or comparable and gainful work when only his respiratory and pulmonary impairments are considered. It seems clear from the record that the claimant has chronic bronchitis and possibly emphysema." This case has now been winding through various agencies and courts for over a decade, and a remand in light of such evidence would constitute an injustice and a waste of judicial resources.
 
 
 35
 This court has also made rebuttal under (b)(3) more difficult since this case began. In Jones v. The New River Co., 3 Black Lung Rep. (MB) 1-199, 1-209 (Ben.Rev.Bd.1981), the Review Board interpreted (b)(3) to allow rebuttal "if it is shown that total disability ... did not arise out of coal mine employment." (emphasis added) Three years later, however, this court held that the employer must meet a higher standard, and demonstrate that "pneumoconiosis played no part in causing a miner's disability." Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1120 (6th Cir.1984) (emphasis added) Thus, as long as black lung contributes to a miner's total disability, the miner is entitled to benefits. Consolidation Coal argues that this change in (b)(3) should allow them an opportunity to present new evidence.
 
 
 36
 However, Consolidation Coal has waived its opportunity to present new evidence on (b)(3). Unlike Harlan Bell, it failed to assert its right to address the new legal standard promptly. Gibas, which set out the new standard, was decided over three years before the employer first argued to the Review Board that it needed a remand to produce evidence suited to the changing standard of subsection (b)(3) rebuttal. In its reply brief, the petitioner attempts to justify this failure to raise the change in the (b)(3) standard by noting that the old (b)(2) standard was similar to the proof required by the new (b)(3) rules. Thus, until York made (b)(2) rebuttal more difficult, it was unnecessary to address the new (b)(3) standard. Accordingly, Consolidation Coal argues that it simply did not raise the issue until it became important. However, as late as the Review Board's order on September 21, 1989, over two years after York, petitioner still argued that its original evidence was sufficient to rebut Rusiecki's claim under (b)(3). Even if we agreed with Consolidation Coal's analysis of York as it applies to (b)(3), we would still conclude that it had lost the opportunity to raise the issue in this court.
 
 
 37
 Finally, petitioner claims that Campbell v. Consolidation Coal Co., 811 F.2d 302 (6th Cir.1987), changed the standard for establishing (b)(4) rebuttal. However, there is no evidence that Campbell made such a change in the law. That case simply states that
 
 
 38
 the statutory definition includes but is not limited to coal worker's pneumoconiosis.... It also includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment. See 20 C.F.R. § 727.202.
 
 
 39
 811 F.2d at 304. Thus, even if Campbell were the first case in this circuit to refer explicitly to the legal definition of pneumoconiosis, it does not seem to have enacted a new rule.
 
 IV
 
 40
 Because the administrative law judge legitimately determined that the evidence precluded (b)(4) rebuttal, we affirm his decision. Because the record presents overwhelming evidence of Mr. Rusiecki's total disability, we see no need for remand to reconsider (b)(2) in light of York. Finally, because petitioner saw no need for (b)(3) remand as late as five years after Gibas and two years after York, we hold that it may not seek remand now. Accordingly, the decision of the Review Board is AFFIRMED.
 
 
 
 *
 The Honorable Robert M. McRae, Jr., Senior United States District Judge for the Western District of Tennessee, sitting by designation