135 F.3d 416
 PEABODY COAL COMPANY; Old Republic Insurance Company, Petitioners,
v.
Carl WHITE; Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
 No. 96-4242.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 27, 1997.
Decided Feb. 3, 1998.
 
 Mark E. Solomons (briefed), Arter & Hadden, Washington, DC, Irene C. Keyse-Walker, Arter & Hadden, Cleveland, OH, for Peabody Coal Co.
 Laura Metcoff Klaus (argued and briefed), Mark E. Solomons, Arter & Hadden, Washington, DC, Irene C. Keyse-Walker, Arter & Hadded, Cleveland OH, for Old Republic Insurance Company.
 John E. Anderson (argued and briefed), Cole, Cole & Anderson, Barbourville, KY, for Carl White.
 Michelle S. Gerdano, Christian P. Barber, U.S. Department of Labor, Office of the Solicitor, Washington, DC, for Director, Office of Worker' Compensation Programs, U.S. Department of Labor.
 Before: RYAN, BATCHELDER, and CLAY, Circuit Judges.
 CLAY, J., delivered the opinion of the court, in which BATCHELDER, J., joined. RYAN, J. (pp. 420-21), delivered a separate opinion concurring in part and dissenting in part.
 OPINION
 CLAY, Circuit Judge.
 
 
 1
 Petitioners, Peabody Coal Company ("Peabody") and Old Republic Insurance Company, appeal the decision of the Administrative Law Judge ("ALJ") granting black lung benefits to respondent, Carl White ("White"). The Benefits Review Board of the Department of Labor ("Board") affirmed the ALJ's decision. For the reasons set forth below, we REVERSE the Board's order in part, AFFIRM in part and REMAND for further proceedings as set out below.I.
 
 
 2
 On July 5, 1979, White filed a claim under the Black Lung Benefits Act (the "Act"), 30 U.S.C. § 901-945, against his employer Peabody and its insurance carrier. On April 30, 1984 the ALJ granted White's claim. The ALJ reviewed White's claim pursuant to 20 C.F.R. § 727.203 which provides an interim presumption if certain conditions are met. The ALJ found that White qualified for the interim presumption because he filed his claim prior to April 1, 1980, was employed with the coal mines in excess of ten years, and established by x-ray the existence of pneumoconiosis. The ALJ then turned to rebuttal. Under § 727.203(b), an employer can rebut the presumption if:
 
 
 3
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work; or
 
 
 4
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work; or
 
 
 5
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 
 
 6
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 7
 The ALJ found that Peabody had not rebutted the presumption pursuant to any of the four methods based on the fact that the ALJ discredited two of the medical opinions submitted by Peabody, claiming that these opinions were contrary to the Act. Peabody appealed this decision arguing that the ALJ discredited proof in the record for improper reasons. The Board agreed and remanded the case back to the ALJ for reconsideration of rebuttal. On remand the ALJ again awarded benefits. Peabody again appealed to the Board.
 
 
 8
 While Peabody's appeal was pending, this Court decided York v. Benefits Review Bd., 819 F.2d 134 (6th Cir.1987). In York, this circuit changed the standard in (b)(2) and held that an employer cannot "rely upon a showing the miner was not totally disabled by the respiratory impairment alone. Rather, they must show the miner is not disabled." Id. at 138. The previous standard only required proof that the employee was not totally disabled due to any respiratory or pulmonary impairment.
 
 
 9
 On October 31, 1989, the Board sua sponte applied York and held that its review of the evidence disclosed no basis for rebuttal under (b)(2) or (b)(3). Thus, the Board affirmed the ALJ's decision to award benefits.
 
 
 10
 On June 8, 1990, this Court decided the Harlan Bell Coal Co. v. Lemar case. 904 F.2d 1042 (6th Cir.1990.) In Lemar, this Court held that an employer is entitled to a new hearing, in order to have an opportunity to rebut evidence, if the employer presented evidence based on pre-York standards, but the ALJ hearing was decided pursuant to post-York standards; thus, based on a new legal standard. Id. at 1049.
 
 
 11
 Based on the Lemar decision Peabody filed a timely motion for reconsideration. Peabody requested remand for reconsideration by the ALJ and an opportunity to submit additional evidence directed toward the new (b)(2) and (b)(3) rebuttal standards. The Board granted Peabody's motion for reconsideration and remanded the case back to the ALJ.
 
 
 12
 On March 16, 1992, the ALJ issued an order stating that he would not permit submission of new evidence in connection with his reconsideration of the case. Peabody requested that the ALJ reconsider that order in a timely motion for reconsideration. On May 5, 1992, the ALJ denied the motion. On August 3, 1992, the ALJ again awarded benefits. Peabody again appealed to the Board.
 
 
 13
 This time the Board affirmed the ALJ's award of benefits. The Board held:
 
 
 14
 Employer concedes that rebuttal pursuant to 20 C.F.R. § 727.203(b)(2) is unavailable and this finding is therefore affirmed as unchallenged on appeal.
 
 
 15
 ...
 
 
 16
 Inasmuch as employer concedes that claimant has established total disability and that therefore, it cannot meet the York standard at subsection (b)(2), only subsection (b)(3) is at issue.
 
 
 17
 (J.A. at 8-9.)
 
 
 18
 However, Peabody contends that in no way did it make any concessions. Peabody asserts that in its brief it only stated that it could not establish (b)(2) rebuttal under York standards based on the old record. The Board further held that because the standard for (b)(3) had not changed, the ALJ properly refused to receive additional evidence on (b)(3) rebuttal.
 
 
 19
 Peabody filed for reconsideration which was denied by the Board on September 19, 1996. Peabody now appeals to this Court.
 
 II.
 
 20
 This Court must affirm the ALJ's decision as long as it is supported by substantial evidence and is in accordance with applicable law. Peabody Coal Co. v. Greer, 62 F.3d 801, 804 (6th Cir.1995). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Id. (citations omitted.) This Court has plenary power to review the Board's legal conclusions. Id. (citations omitted.)
 
 
 21
 In Greer, this Court noted that the York decision substantially changed the employer's strategy in dealing with rebuttal pursuant to (b)(2). Greer, 62 F.3d at 804. Prior to York, an employer could establish rebuttal relatively easily under (b)(2) by showing that the employee was not totally disabled due to his respiratory or pulmonary functions. Id. On the other hand, if the employee was totally disabled due to respiratory or pulmonary impairment, then the employer would turn to (b)(3) which required a showing that the employment was not the cause, in whole or in part, of the disability. Id. The (b)(3) showing was much more difficult. Id. Thus prior to York, employers would most likely present evidence in support of (b)(2), the easier rebuttal subsection, and present little to no evidence in support of (b)(3). Because these two subsections are in conflict with each other, this approach made the most sense. The employer could not have been expected on the one hand to argue under (b)(2) that the employee had no respiratory impairment and then argue under (b)(3) that the supposedly non-existent respiratory impairment was not caused, in whole or in part, by the employment.
 
 
 22
 After York, rebuttal under (b)(3) became easier than rebuttal under (b)(2). Id. After York, the (b)(2) standard changed. Now in order for an employer to rebut under (b)(2), the employer had to make a showing that the employee was not totally disabled due to any impairment, not just a respiratory impairment alone. Id. "Under (b)(3), however, the employer could still rebut by showing that the [employee's] 'total disability' was caused by something other than pneumoconiosis." Id.
 
 
 23
 It is because of this change in the rebuttal standards that Peabody now argues that the ALJ erred by not allowing it to present new evidence based on the post-York standards pursuant to (b)(2) and (b)(3). Moreover, the Board erred by affirming that decision. This argument has already been addressed by this Court in its Lemar decision.
 
 
 24
 In Lemar, at the claimant's ALJ hearing, it was determined that the employer's evidence was sufficient to rebut the interim presumption. 904 F.2d at 1044. However, after the record was closed, but before an order by the ALJ was issued, York was decided. The ALJ failed to apply the York standards and denied benefits to the claimant. Id. at 1045. In the subsequent appeal by the claimant, the Board applied the York standards and held that the employer did not establish rebuttal pursuant to (b)(2). The case was remanded back to the ALJ for the entry of a benefit award. Id. Before the decision by the Board, the employer argued that, if York applies the case should be remanded to the ALJ because the new York standards had substantially undermined its defense. Id. However, the Board entered its order without addressing the employer's request for a new trial. Id. This Court ultimately remanded the case to the ALJ holding that, pursuant to the employer's Fifth Amendment right to due process, a hearing is required. This Court further held that the employer's right to a hearing
 
 
 25
 encompasses not only the right to present evidence, but also the right to rebut the claims of [the employee] under the correct legal standards.... [The employer] must be granted an opportunity to present evidence directed at the post-York standards as such evidence is necessary to the full presentation of [the employer's] defense.
 
 
 26
 Id. at 1049 (citations omitted).
 
 
 27
 Similarly, in the case at hand, the ALJ applied the post-York standards without giving Peabody the opportunity to present new evidence. Thus, in accord with Lemar, we hold that Peabody should be allowed to present evidence based on the post-York standards, as such evidence is necessary to prepare an adequate defense. However, the new evidence should only be allowed to establish rebuttal pursuant to (b)(3). Because (b)(2) rebuttal was never established prior to York, Peabody cannot be allowed to submit new evidence to satisfy a more rigorous standard.
 
 
 28
 Prior to York Peabody opted to present its best case under (b)(2), and thus presented little to no evidence under (b)(3). Subsection (b)(2) at that time was the easier subsection. Greer, 62 F.3d at 804. All that was required for rebuttal under (b)(2) prior to York was proof that White was not totally disabled due to any respiratory or pulmonary impairment. However, Peabody failed to establish rebuttal under (b)(2), which in essence meant that White was totally disabled due to respiratory or pulmonary impairment. After York a higher standard of proof was required. After York, Peabody had to establish that White was not disabled due to any impairment. As previously stated, White had already established total disability when Peabody failed to rebut under (b)(2). Hence, no new evidence would have established rebuttal pursuant to (b)(2) based on the post-York standards. Therefore the ALJ's decision to not permit new evidence on (b)(2) is affirmed.[1]
 
 III.
 
 29
 For the foregoing reasons we REVERSE the Board's order, in part, and REMAND for further proceedings consistent with this opinion. Peabody should be entitled to submit new evidence on (b)(3), as necessary, to prepare an adequate defense; thus, we REVERSE the Board's order as to this issue, and REMAND the case to the Board, with instructions to send this matter back to the ALJ for a new trial as to petitioners' rebuttal pursuant to (b)(3). However we AFFIRM the ALJ's decision regarding (b)(2) since no new evidence would have established rebuttal under the more rigorous (b)(2) standard.
 
 
 30
 RYAN, Circuit Judge, concurring in part and dissenting in part.
 
 
 31
 While I agree with the majority opinion insofar as it affirms the Benefits Review Board's decision that Peabody Coal Company should not be permitted to present new rebuttal evidence under 20 C.F.R. § 727.203(b)(2), I must nonetheless dissent in part.
 
 
 32
 The majority remands the case to allow Peabody to submit new rebuttal evidence under subsection (b)(3). It does so on the ground that our decision in York v. Benefits Review Board, 819 F.2d 134 (6th Cir.1987), necessarily resulted in a change of litigation strategy for Peabody. The majority correctly notes that prior to York, (b)(2) was the preferred rebuttal route, while after York, (b)(3) became the easier standard to meet. See Peabody Coal Co. v. Greer, 62 F.3d 801, 804, 806 (6th Cir.1995). It further correctly notes that there is some analytical tension between the two rebuttal routes. From there it reasons that Peabody initially pursued (b)(2) rebuttal, but had York been the prevailing standard, it would have pursued (b)(3) rebuttal. Thus, the majority reasons, Peabody "could not have been expected on the one hand to argue under (b)(2) that the employee had no respiratory impairment and then argue under (b)(3) that the supposedly non-existent respiratory impairment was not caused, in whole or in part, by the employment." (Maj. op. at 419.)
 
 
 33
 Perhaps Peabody should not have been expected to argue that way, but the fact is, it did argue that way. The record clearly shows that Peabody consistently and vigorously pursued (b)(2) and (b)(3) rebuttal simultaneously; at every stage, and in every appeal, Peabody articulated arguments with respect to both standards, which arguments were thoroughly discussed and rejected. And in this appeal, Peabody has never enunciated what, precisely, it would have done differently, or what it will do on remand. In theory, then, I agree with the majority's reasoning; the application of that reasoning to this particular set of circumstances, however, I find wanting.
 
 
 34
 In short, notwithstanding Peabody's importuning regarding changes in strategy, the fact is that there is nothing different Peabody would have or could have done, and a remand will only serve to delay the inevitable. There is, accordingly, no fundamental unfairness in not allowing Peabody to present new evidence; on the contrary, allowing Peabody to present new evidence will result in a windfall for it, as it will further postpone the time for it to pay the black-lung benefits for which it will, sooner or later, be held accountable. Accordingly, I respectfully dissent in part.
 
 
 
 [1]
 This case is distinguished from Lemar, inasmuch as the employer in Lemar established rebuttal pursuant to (b)(2). Therefore, our holding today is consistent with our holding in Lemar and other similar cases. See, e.g., Cal-Glo Coal Co. v. Yeager, 104 F.3d 827 (6th Cir.1997); Greer, 62 F.3d 801